O'MELVENY & MYERS LLP
Peter Friedman (Pro Hac Pending)
Diana Perez
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

Suzzanne Uhland (Pro Hac Pending)
Jennifer Taylor (Pro Hac Pending)
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701

*Counsel for the Petitioners*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 |
| **SUNTECH POWER HOLDINGS CO., LTD. (IN PROVISIONAL LIQUIDATION),** | Case No. 14-_____ |
| **Debtor in a Foreign Proceeding.**[1] | |
| | Hearing Date:  April 1, 2014, 10:00 a.m. |
| | Related to Docket Item __ |

## DECLARATION OF DAVID WALKER AND IAN STOKOE
## IN SUPPORT OF CHAPTER 15 PETITION OF
## SUNTECH POWER HOLDINGS CO., LTD. (IN PROVISIONAL LIQUIDATION)
## FOR RECOGNITION OF FOREIGN MAIN PROCEEDING

---

[1]  The last four digits of the registration number for Suntech Power Holdings Co., Ltd. (in provisional liquidation) are 3146.  The mailing address of its registered office is Level 5 Strathvale House, 90 North Church Street, PO Box 258, George Town, Grand Cayman, KY1-1104, Cayman Islands.

1

We, David Walker and Ian Stokoe, respectively, pursuant to 28 U.S.C. § 1746, hereby declare, under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of our knowledge and beliefs:

1.    We are the Joint Provisional Liquidators ("**JPLs**" or the "**Petitioners**") of Suntech Power Holdings Co., Ltd. (in provisional liquidation) ("**Suntech**").[2]  We were appointed by the Grand Court of the Cayman Islands, Financial Services Division (the "**Cayman Court**") to oversee the provisional liquidation proceeding of Suntech pending before the Cayman Court under Cause No. FSD 143 OF 2013 (AEFJ) (the "**Cayman Proceeding**").  We are authorized by the Cayman Court as a representative of Suntech to seek relief under chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**").

2.    Mr. Walker and Mr. Stokoe are directors of PwC Corporate Finance & Recovery (Cayman) Limited. Mr. Walker has more than 20 years of experience in corporate restructuring, insolvency, and investigating complex financial transactions in the Caribbean (including the Cayman Islands), Australia, and Canada. Mr. Stokoe has more than 30 years of experience with corporate restructuring and insolvency matters in the United Kingdom and the Cayman Islands. We are both residents of the Cayman Islands.

3.    We submit this declaration (this "**Declaration**") in support of the *Verified Petition of Foreign Representatives David Walker and Ian Stokoe in Support of Chapter 15 Petition of Suntech Power Holdings Co., Ltd. for Recognition of Foreign Main Proceeding Pursuant to Section 1517 of the Bankruptcy Code* (the "**Verified Petition**") seeking recognition of the Cayman Proceeding as a foreign main proceeding and for additional relief.  The facts set forth herein are based on our personal knowledge or, as indicated below, are derived from the books and records of Suntech or from other sources, including court filings and statements of governmental agencies, that we consider to be reliable.

---

[2] For the avoidance of doubt, Suntech, as used herein refers only to Suntech Power Holdings Co., Ltd. (in provisional liquidation), and not to any of its subsidiaries or any consolidated entity.

2

4.     We are advised by counsel that chapter 15 recognition requires that a petition be brought by a "foreign representative" of a "foreign proceeding" as such terms are defined in section 101(24) and 101(23) of the Bankruptcy Code, respectively.  We are further aware that in order to be recognized under chapter 15 as a foreign main proceeding, sufficient evidence must be shown that the foreign proceeding is pending in the debtor's "center of main interests" ("**COMI**") and in order to be recognized as a foreign nonmain proceeding, sufficient evidence must be shown that the foreign proceeding is pending where the debtor has an "establishment".  Part I of this declaration supports the characterization of the JPLs as foreign representatives and of the Cayman Proceeding as a foreign proceeding.  Parts II through VI discuss the historical operations of Suntech, an overview of its current functions, status, assets and liabilities, and the commencement of the Cayman Proceeding.  Part VII addresses Suntech's need for recognition and the relief being requested.  Part VIII addresses the administration of Suntech's interests in the Cayman Islands, supporting a determination that Suntech's COMI is in the Cayman Islands or, in the alternative, that Suntech has an establishment in the Cayman Islands.  Part IX states the manner in which notice of the Cayman Proceeding has been provided to Suntech's investors and creditors.

**I.     The JPLs and the Cayman Proceeding Constitute "Foreign Representatives" and "Foreign Proceeding", Respectively, Under the Bankruptcy Code.**

5.     We were jointly appointed as provisional liquidators of Suntech by an order of the Cayman Court dated November 7, 2013 (the "**Appointment Order**").  A true and complete certified copy of the order appointing us as the provisional liquidators of Suntech is attached to the Verified Petition submitted on behalf of Suntech as Exhibit A thereto.  The Appointment Order grants the express authorization of the Cayman Court for us to seek recognition of the Cayman Proceeding under chapter 15 of the Bankruptcy Code.

6.     We are advised by counsel that, in light of the above, we are "foreign representatives" within the meaning of section 11 U.S.C. § 101(24).  Declaration of Colin Douglas McKie, filed contemporaneously herewith (the "**McKie Declaration**") ¶¶ 51–53.  We

3

are further advised by counsel that the Cayman Proceeding is a "foreign proceeding" within the meaning of 11 U.S.C. § 101(23).  *Id.* ¶¶ 49–50.

II.    **Organization and Historical Operations of Suntech and Suntech Group**

7.    Suntech was formed as an exempted limited liability company under the Cayman Islands Companies Law on August 8, 2005.  Suntech organized in the Cayman Islands in large part because its predictable corporate and insolvency laws facilitate raising debt and equity capital.  A true and correct copy of Suntech's Certificate of Incorporation is attached as Exhibit A.  Suntech's registered office is in the Cayman Islands at Level 5 Strathvale House, Grand Cayman, KY1-1104, Cayman Islands.  Suntech's statutory records, shareholder registry and minutes are located at its registered office.

8.    Suntech's American Depositary Shares ("**ADSs**") were publicly listed on the New York Stock Exchange (the "**NYSE**") in 2005.  It has been required to make regular public filings with the United States Securities and Exchange Commission (the "**SEC**") as a foreign issuer since 2005.  Offering materials provided to prospective investors in Suntech's ADSs described Suntech as a Cayman Islands registered entity.  *See* Form F-1 Registration Statement of Suntech as filed November 1, 2005, the first page of which is attached hereto as Exhibit B.  On February 12, 2014, the NYSE's Committee for Review upheld a decision made by the NYSE to commence delisting proceedings of Suntech's ADSs.  The NYSE has subsequently made filings with the SEC to delist Suntech's ADSs as of February 25, 2014.

9.    Prior to the appointment of the JPLs, the overall management of Suntech was supervised by its Board of Directors.  Suntech's five-member Board is comprised of Michael Pearson, a British citizen and Cayman Islands resident, Michael Nacson, a British citizen and resident of Hong Kong, Kurt Metzger, a U.S. citizen and Singapore resident, Zhengrong Shi, an Australian citizen and resident of the People's Republic of China ("**PRC**"), and David He, a PRC citizen and resident.  The Board's most recent meeting, at which Michael Pearson, Michael Nacson, and Mr. Walker were present in person, was conducted on February 11, 2014, at Suntech's registered office in the Cayman Islands.

4

10. Suntech is a holding company that is the ultimate parent of an international group of companies (the "**Suntech Group**"). The Suntech Group's organizational structure is depicted in Exhibit C.

11. Historically, the operating subsidiaries in the Suntech Group developed, manufactured, and marketed photovoltaic ("**PV**") modules and cells and provided PV system integration services to customers around the world. The Suntech Group sold its solar products for residential, commercial, industrial, and utility applications through distributors and system integrators, as well as to end-users throughout North America, Europe, Asia, and the Middle East. The Suntech Group has delivered more than 25 million PV panels to over 1,000 customers in more than 80 countries.

12. Directly and indirectly, Suntech owns a worldwide network of companies, including Suntech Power International, Ltd., the group's European sales arm operating from Switzerland ("**SPI**"), Global Solar Fund, SCA, SICAR, an investment fund created to invest in private companies that own or develop projects in the solar energy sector in Italy ("**GSF**"), and its direct subsidiaries, Power Solar System Co., Ltd. ("**PSS**") and Suntech Power (Hong Kong) Co., Ltd. ("**SPHK**"), both British Virgin Islands registered companies.

13. SPI, a company incorporated in Switzerland, is the Suntech Group's principal operating subsidiary in Europe. On April 8, 2013, SPI applied for a provisional moratorium on creditor claims to the Cantonal Court in Schaffhausen, Switzerland pursuant to the Swiss Federal Act on Debt Enforcement and Bankruptcy as it was required to do under Swiss law as a result of being insolvent on both a going concern valuation and liquidation valuation basis. A definitive moratorium has been instituted by the Swiss court through June 19, 2014. SPI currently operates under the supervision of a court-appointed administrator. *See* Exhibit D to this Declaration. One of SPI's assets is its equity interest in its direct subsidiary Suntech ES Holdings, Inc., the holding company for the Suntech Group's U.S.-based subsidiaries, which include Suntech Power Development Co., Inc., which was formed to hold various investments but no longer has any

significant assets, Suntech Arizona, Inc., which owns a factory that is no longer in operation, and Suntech America, Inc., the Suntech Group's U.S. distribution business.

14.     PSS, a direct subsidiary of Suntech, is a holding company and the indirect parent of SPI.  In order to pursue certain claims of, and the recovery of certain transfers made by, PSS (thereby recovering value for the creditors of its direct parent, Suntech), we caused PSS to enter into a liquidation proceeding in the British Virgin Islands on November 14, 2013.  *See* Exhibit E to this Declaration.

15.     The Suntech's Group primary manufacturing capacity was formerly at Wuxi Suntech Power Co., Ltd. ("**Wuxi Suntech**").  Wuxi Suntech, with most of its operations in Wuxi, PRC, manufactured PV cells and modules.  On March 18, 2013, a group of Chinese banks petitioned the Wuxi Municipal Intermediate People's Court in Jiangsu Province, PRC (the "**Wuxi Court**") for the reorganization of Wuxi Suntech and the appointment of administrators pursuant to the Enterprise Bankruptcy Law of the PRC.  The Wuxi Court issued an order placing Wuxi Suntech into administration on March 21, 2013.  In connection with the plan approved by creditors in that administration proceeding, the administrator approved the transfer of all assets of Wuxi Suntech to a third party bidder in October 2013.  As a result of the insolvency proceeding and the asset divestiture, the Suntech Group no longer controls Wuxi Suntech's former manufacturing operations in the PRC.[3]  The Suntech Group's primary PRC manufacturing capacity is now with its 40% equity interest in Wuxi Sunshine, a joint venture established in November 2010 to engage in PV cell manufacturing.

## III.     Suntech's Assets

16.     As a holding company, Suntech's primary assets are the equity of PSS, the stock certificates of which are located at its registered office in the Cayman Islands.

---

[3] The transfer purported to include all of the equity interests in Wuxi Suntech as well as the stock of certain subsidiaries of PSS that were purportedly transferred to Wuxi Suntech in May 2013.  The JPLs are investigating and may dispute the sale and such transfers.  Suntech and the JPLs reserve all claims, rights, defenses and arguments with respect to the sale and such transfers, and nothing herein shall constitute a waiver of such claims, rights, defenses, and arguments.

6

17.     Suntech's other assets include unrestricted cash, including, as of the Petition Date, $3,191,153.70 in a Cayman Islands deposit account[4] and $500,000 in a New York-based trust account maintained with Kurtzman Carson Consultants, and, as of November 30, 2013, an additional $2.58 million in eight different deposit accounts worldwide.  Suntech is also required by lenders to maintain legally restricted funds in accounts in Luxembourg, Hong Kong, and the PRC to be on deposit for the sole purpose of covering obligations under guarantees of indebtedness incurred by subsidiaries of GSF.  As of November 30, 2013, the aggregate balance of the restricted funds was approximately $2.78 million.

18.     Suntech also holds the Chinese export license for the manufacturing business previously conducted by the Suntech Group.

19.     Additionally, Suntech holds intercompany claims against its subsidiaries located worldwide with an asserted value of $1.46 billion.

20.     In addition to the intercompany claims, Suntech may also have certain claims and causes of action against both related and unrelated entities, certain of which are described in more detail in section VI.B below.  We are in the process of investigating these claims and their value (if any) to Suntech, its estate and its creditors.

**IV.    Suntech's Liabilities**

21.     Suntech financed the operations of the Suntech Group, in part, through proceeds from the listing of Suntech's ADSs on the New York Stock Exchange in public offerings completed in December 2005 and May 2009.  In addition, Suntech funded the operations of the Suntech Group through borrowings described below.

A.    *2013 Notes*

22.     On March 17, 2008, Suntech closed an offering of $575 million of 3.00% convertible senior notes due 2013 to qualified institutional buyers pursuant to Rule 144A

---

[4] Upon approval of the Cayman Court of the second tranche of the DIP Financing in the incremental amount of $3.5 million, these funds will also be deposited into the Cayman Islands account.

OMM_US:72138085

promulgated under the Securities Act of 1933 (the "**Notes**") in order to fund the capacity expansion of the Suntech Group's business.  The current principal balance of the Notes is approximately $541 million.  The Notes are senior unsecured obligations.  The offering materials distributed to investors in connection with the issuance of the Notes indicated that Suntech was a registered Cayman Islands company.

23.     The Notes matured on March 15, 2013.  Suntech defaulted on the repayment of the Notes at maturity.  Since then, Suntech has made extensive efforts with its creditors to reach agreement on restructuring of the Notes, including three forbearance agreements and a Restructuring Framework Agreement among Suntech and creditors that are certain funds managed by Clearwater Capital Partners, LLC (collectively, "**Clearwater**") and certain funds managed by Spinnaker Capital Limited (collectively, "**Spinnaker**" and together with Clearwater, the "**Supporting Noteholders**") (collectively, the largest holders of the Notes in the aggregate of amount of $260,300,00), which laid out an agreement on restructuring of the Notes as part of a global resolution of Suntech's finances and operations.  While these formal agreements are no longer in effect, we continue to be in active discussions with these (and other) creditors on behalf of Suntech with the goal of achieving a consensual restructuring.

24.     Certain minority holders of the Notes commenced litigation against Suntech in respect of the Notes in June 2013.  On September 19, 2013, the U.S. District Court in the Southern District of New York issued judgments in favor of noteholders Trondheim Capital Partners, L.P. ("**Trondheim**"), Michael Meixler ("**Meixler**") and Marcus and Jessica Dugaw in connection with defaulted Notes held by them in the aggregate principal amount of less than $0.6 million (the "**Noteholder Litigation**").  Suntech appealed the judgments.

25.     Upon obtaining judgments in the Noteholder Litigation, the judgment creditors or their assignees together with a fourth entity, collectively representing approximately 0.3% of the outstanding principal of the Notes (i.e. Trondheim, Meixler, Longball Holdings, LLC, and Jiangsu Liquidators, LLC) (collectively, the "**Petitioning Creditors**"), commenced an involuntary proceeding against Suntech under chapter 7 of the Bankruptcy Code on October 14,

8

2013 in the Southern District of New York (the "**Chapter 7 Case**") in respect of the judgments obtained by them in the Noteholder Litigation. *See* Exhibit F to this Declaration.

26.     Suntech moved to dismiss the Chapter 7 Case on the following grounds (among others): (i) the Petitioning Creditors failed to comply with Rule 1003 of the Federal Rules of Bankruptcy Procedure by failing to file any proof that they did not acquire their claims for the purpose of commencing the Chapter 7 Case; and (ii) the Petitioning Creditors commenced the Chapter 7 Case in bad faith. Suntech also reserved the right to seek abstention under section 305 of the Bankruptcy Code on the basis that it is in the best interests of Suntech and its creditors in light of the pending Cayman Proceeding.

27.     Suntech, the Petitioning Creditors, and the Supporting Noteholders, have since entered into a Restructuring Support Agreement (the "**RSA**"). *See* Exhibit G to this Declaration. Under the RSA, Suntech, the Petitioning Creditors and the Supporting Noteholders have agreed that a stipulation among the parties for the dismissal of the Chapter 7 Case will be executed and presented to the court following recognition of the Cayman Proceeding under chapter 15 of the Bankruptcy Code. In addition, the RSA provides that (among other things):

- The JPLs, on behalf of the Company, will use commercially reasonable efforts to file the chapter 15 petition by February 21, 2014;

- The Supporting Noteholders will support the chapter 15 petition;

- The restructuring must treat all beneficial holders of the Notes *pari passu*;

- Upon performance of the RSA, Suntech is required to dismiss the appeals of certain judgments obtained by the Petitioning Creditors relating to repayment of the Notes held by the Petitioning Creditors; and

- The RSA may be terminated if Suntech fails to file the chapter 15 petition by February 21, 2014, an order obtaining recognition of the Cayman Proceeding is not entered by this Court by May 31, 2014, or a scheme of arrangement in the Cayman Proceeding is not approved by December 31, 2014.

OMM_US:72138085

B.    *IFC Loan*

28.    On June 30, 2009, Suntech entered into a $50 million convertible loan agreement with International Finance Corporation, a member of the World Bank Group (the "**IFC Loan**") to support the Suntech Group's transition to high-efficiency "Pluto" technology and to meet certain debt refinancing requirements.  Suntech's payment default on the Notes triggered a cross-default under the IFC Loan, which has been accelerated by the lender as a result.  International Finance Corporation has been working with Suntech and the Supporting Noteholders regarding a consensual restructuring of Suntech.

C.    *GSF Guarantee and Other Guarantees of Subsidiary Indebtedness*

29.    In May 2010, Suntech purportedly guaranteed payment obligations under finance facilities provided by China Development Bank ("**CDB**") to Solar Puglia II, S.a r.l., an investee company of GSF, in connection with the development of PV projects in Italy.  The Suntech Group (through SPI) owns approximately 88% of the limited partnership interests in GSF.  The obligations purportedly guaranteed by Suntech include a €354.2 million facility agreement and a €200 million master lease agreement signed with CDB.  In addition, Suntech agreed to keep on deposit funds sufficient to cover one six-month installment payment of amounts due under each agreement, to be kept in cash collateral accounts with certain commercial banks, which accounts are referenced among Suntech's assets above.  As of the Petition Date, CDB has drawn down most of these funds.

30.    Suntech has also executed guarantees for other obligations of its subsidiaries or joint ventures.  These purported guarantees are guarantees of payment under various supply contracts and financings.

## V.    **Commencement of the Foreign Proceeding**

31.    On November 5, 2013, Michael Nacson (the "**Winding Up Petitioner**") filed a petition in the Cayman Court to wind up Suntech (the "**Winding Up Petition**").  *See* Exhibit H to this Declaration.  The Winding Up Petition stated that the Winding Up Petitioner was owed $16,666 for outstanding fees due in relation to his services as a director of Suntech.  An

OMM_US:72138085

application was concurrently made and requested our appointment as joint provisional liquidators pursuant to section 104(3) of the Companies Law of Cayman Islands (2013 Revision) (the "**Cayman Companies Law**").  *See* <u>Exhibit I</u> to this Declaration.  True and correct copies of the First Affidavit and Second Affidavit of the Winding Up Petitioner both sworn on November 5, 2013, are attached hereto as <u>Exhibit J</u>.

32.    On November 7, 2013, Mr. Stokoe and I were appointed the joint provisional liquidators of Suntech pursuant to the Appointment Order.  As required by the Appointment Order, we published notice of our appointment as the JPLs in connection with the Cayman Proceeding in various periodicals of international circulation, including:

- The Cayman Island Gazette on November 20, 2013;

- The Global Edition of The Wall Street Journal on November 22, 2013 with distribution throughout the United States, Europe and Asia;

- The People's Daily published in Chinese on November 23, 2013 with circulation in the PRC; and

- The China Daily published in English on November 28, 2013 with circulation in the PRC.

Additionally, we sent notice of our appointment to all known creditors of Suntech, as well as the Depository Trust Company ("**DTC**"), as the holder of record of the Notes, for publication on its legal notice system, and later the notice of the initial meeting of creditors, which was held in the Cayman Islands on February 12, 2014.  The purpose of the meeting was to provide an update on the conduct of the Cayman Proceeding, to seek the creditors' approval of the basis of the JPLs' remuneration for the period from November 7 to December 13, 2013, and to elect a liquidation committee to represent the general body of creditors of Suntech.  Over thirty creditors attended either in person or by phone.

33.    Following the vote of the creditors by majority (in value), on February 19, 2014, the liquidation committee of Suntech (the "**Committee**") was formed.  The members of the Committee include: CDB, Spinnaker Global Emerging Markets Fund Ltd., Clearwater Capital

11

Partners Fund III, L.P., Wilmington Trust Company, and SPI.  *See* Exhibit K to this Declaration.
The purpose of the Committee is to provide the JPLs with a sounding board of the views of the
general body of creditors and to assist the JPLs generally.  The Committee's first meeting was
conducted on February 20, 2014 from our offices in the Cayman Islands.

## VI.    Current Administration of Suntech's Affairs by the JPLs

34.    Pursuant to the Appointment Order, we are authorized in our capacities as JPLs to
"develop and propose any compromise or arrangement with the Company's creditors or any
class thereof, including a compromise or arrangement by way of a scheme of arrangement
pursuant to [the Cayman Companies Law]."  In furtherance of that directive, the Cayman Court
gave us a set of broad operational and governance powers, including the authority to, among
other things:

- monitor, oversee and supervise the directors' management of the day to day business of Suntech and its subsidiaries;

- do all acts and execute, in the name of Suntech, all deeds, receipts, and other documents and for that purpose to use, when necessary, the Suntech corporate seal;

- take possession of, collect and get in the property of Suntech and for that purpose to demand all debts due;

- take possession of, collect and get in the books and records of Suntech, including the accounting and statutory records;

- exercise any and all rights that Suntech may have as a shareholder of its subsidiaries or any other entities in which it has invested;

- deal with all questions in any way relating to or affecting the assets or the restructuring of Suntech;

- do all such things as may be necessary or expedient for the protection or recovery of Suntech's property and assets and those of its subsidiaries;

- supervise the operation, opening and/or closing of any bank account of Suntech;

OMM_US:72138085

- draw, accept, make and indorse any bill of exchange or promissory note or borrow funds for the purpose of the day to day expenses of the provisional liquidation on behalf of Suntech;

- communicate with and carry out any necessary filings with regulatory bodies on behalf of Suntech;

- make payments to creditors, which may have the effect of preferring a creditor;

- assert claims in any bankruptcy on behalf of Suntech;

- take such steps as the JPLs may consider appropriate in respect of the legal proceedings pending against Suntech, including the Chapter 7 Case;

- discharge debts incurred by Suntech after the commencement of the Cayman Proceeding;

- engage staff to assist the JPLs in the performance of their duties;

- seek recognition of the Cayman Proceeding in any jurisdiction the JPLs consider necessary, and specifically, to seek relief under chapter 15 of the Bankruptcy Code;

- appoint attorneys and advisors to advise and assist them in the performance of their duties;

- authorize the directors of Suntech to exercise such duties as the JPLs consider fit; and

- do all other things incidental to the exercise of the powers set out above.

35.     Since our appointment on November 7, 2013, and as of the date on which the Verified Petition was filed (the "**Petition Date**"), we have monitored, overseen and supervised the management and control of Suntech's affairs from the Cayman Islands and are in the midst of a complex restructuring process for which we are the sole persons authorized to act on behalf of Suntech.  In furtherance of this process, we have carried out a substantial amount of work on behalf of Suntech.  Some highlights of the work we have performed on behalf of Suntech are discussed below.

    *A.*    *Creditor Meetings and Negotiations*

OMM_US:72138085

36.    Cayman Islands law requires that when an insolvent company is wound up, the liquidators must hold meetings of creditors and provide those parties with the opportunity to form a committee to assist the liquidators in their functions. The role of the committee is to act as a representative for the general body of unsecured creditors. We conducted the official meeting of creditors at our Cayman Islands offices on February 12, 2014, notice of which was sent to all known creditors and publicly posted on the investor relations section of Suntech's website at http://ir.suntech-power.com, DTC's legal notice system, the Global Edition of the Wall Street Journal with circulation throughout the United States, Europe and Asia, The China Daily (in English) and The People's Daily (in Chinese) both with circulation throughout the PRC, and the SEC's website (EDGAR) as a 6-K filing. A copy of the notice is attached hereto as Exhibit L.

37.    Over thirty creditors participated in the meeting, and five creditors were present in person via a representative. In addition to discussing the affairs, assets and liabilities of Suntech with creditors at the meeting, we solicited nominations for members of the Committee. Subsequent to the initial meeting of creditors, we tabulated votes of creditors and the Committee was formed on February 19, 2014. The Committee held its first meeting on February 20, 2014 from our offices in the Cayman Islands. Going forward, the Committee will meet regularly with the JPLs to consult on the conduct of the Cayman Proceeding and the restructuring of Suntech.

38.    In addition to conducting the official meeting of creditors, we have held informal meetings with creditors in and from our offices in the Cayman Islands to discuss Suntech's restructuring efforts. For example, on February 12, 2014, we met in person in the Cayman Islands with counsel for the Supporting Noteholders to discuss the steps forward for formulating a scheme of arrangement, asset recovery, and seeking chapter 15 recognition from this Court. Further, we carried out negotiations with creditors from our Cayman Islands offices in coming to terms on the RSA.

39.    In accordance with the Appointment Order, we prepared a *First Report to the Grand Court of the Cayman Islands by the Joint Provisional Liquidators* dated December 20,

14

2013 and caused the same to be transmitted to all known creditors and will be providing

additional reports going forward.  A copy of that report is Appendix 3 of <u>Exhibit L</u> to this

Declaration.

40.    As part of the notice to creditors of the appointment of the JPLs, creditors have

generally been informed to contact the JPLs for information regarding Suntech.  *See* <u>Exhibit L</u> to

this Declaration.  In addition, We are collecting proofs of debt from Suntech's creditors and

purported claimholders.

B.    *Asset Analysis and Recovery*

41.    The JPLs continue to analyze assets and claims of Suntech for the purpose of

maximizing value for its estate and creditors, including carrying out an extensive review of

Suntech's portfolio to develop a strategy for generating value from the equity of its direct and

indirect subsidiaries.  Part of this task includes investigating intercompany transfers and claims

that Suntech may have in the subsidiary insolvency proceedings mentioned above and otherwise,

and taking steps to recover  assets when appropriate.

42.    In particular, the JPLs are scrutinizing a series of intercompany transfers and

claims that resulted in the transfer of the equity of Suntech Power Japan Corporation and

Suntech Power Investment Pte., Ltd. ("**<u>Suntech Singapore</u>**") from PSS to Wuxi Suntech.  The

transfers were based on assignments of intercompany claims among PSS, SPI, Wuxi Suntech and

Suntech, resulting in an amount owing from PSS to Wuxi Suntech, which amount was

purportedly satisfied by the equity transfers.  In part to facilitate the recovery of these transfers,

we caused PSS to enter into an insolvency proceeding in its country of organization, the British

Virgin Islands.  Since the commencement of that proceeding, PSS has obtained a judgment from

a Singapore court against Suntech Singapore in the amount of $263,910,599 in respect of

intercompany debt owed by Suntech Singapore.

43.    We have also had a number of meetings with the court-appointed administrator of

SPI and chief restructuring officer of SPI to discuss the restructuring of SPI and the treatment of

the intercompany claim between SPI and Suntech and the claim between SPI and PSS.  We will

OMM_US:72138085

continue communications regarding the restructuring of SPI as it is expected that SPI will be an integral part of the Suntech Group's sales and distribution activities in Europe.

44.     Additionally, we have had ongoing meetings and correspondence with the officer responsible for the restructuring of GSF about its financial position, the operation of its investment fund, and various legal proceedings pending against GSF.  As part of their analysis of GSF's financial projections, we have discussed the operation of the solar power plants in GSF's portfolio directly with site managers.  We are also investigating the circumstances surrounding the guarantee Suntech delivered to CDB in respect of a GSF portfolio company, including allegations of fraud and a subsequent settlement.

## C.    *Administration of Suntech*

45.     Suntech currently has no chief executive officer, and its board carries out its functions under our supervision at the direction of the Cayman Court.[5]  As a result, we, and no other party, have been administering Suntech's affairs for the purpose of reorganizing Suntech pursuant to a scheme of arrangement under Cayman Islands law consistent with the Appointment Order.  This function includes maintaining Suntech's corporate records, minutes and books of account.  The JPLs' address is the address listed as Suntech's address on the company's website, it is the address for notices in all of Suntech's new agreements, such as the RSA and recent DIP Financing (as defined below) agreement, and the JPLs having instructed Suntech to send official change of address notices in connection with the Notes and the IFC Loan (see Exhibit M attached to this declaration),  it is where Suntech receives all official notices under the IFC Loan and the Notes.  We negotiated the terms of a long-term, multi-draw, Cayman Islands-law governed loan to provide financing for Suntech to support a path to restructuring (the "**DIP Financing**") and opened deposit accounts in the name of Suntech into which the proceeds of the DIP Financing were deposited.  We also obtained approval of the DIP Financing from the Cayman Court.  We have engaged various professionals, including Cayman Islands and United

---

[5] Suntech's board of directors retains day-to-day management authority under the direct supervision of the JPLs.  As noted herein, the board's most recent meeting was conducted in the Cayman Islands.

OMM_US:72138085

States counsel, to represent Suntech and us in various matters, including the Chapter 7 Case. We also maintain Suntech's assets, including taking in Suntech's accounts receivable and administering Suntech's export license, negotiating the terms of its use by other members of the Suntech Group, and negotiating with the buyer of the Wuxi Suntech assets.

46.      We have taken these steps (as well as authorizing the filing of the Verified Petition) to facilitate the emergence of Suntech from the Cayman Proceeding as a reorganized parent company of the Suntech Group, which will be focused on the worldwide distribution of solar panels.

## VII.    <u>Need For Recognition</u>

47.      We are engaging in good faith discussions toward a consensual restructuring of Suntech's business. The Cayman Proceeding provides for a centralized process to assert and resolve claims against Suntech's estates, and to make distributions to Suntech's creditors. We seek recognition of the Cayman Proceeding in aid of our efforts to reorganize Suntech and manage, recover and administer its assets in accordance with Cayman Islands law. Central administration of these assets is critical to any meaningful realization of their value. Chapter 15 recognition will allow us to protect Suntech's assets from piecemeal attack by individual creditors in pending U.S. litigation, thereby ensuring their equitable distribution to creditors through the Cayman Proceeding under Cayman Islands law. It will also facilitate an orderly restructuring of Suntech under the control of the JPLs in order to maximize the value available for Suntech's creditors in contrast to a liquidation. Absent recognition, our ability to administer Suntech's assets pursuant to an orderly arrangement may be materially compromised. Among other things, a denial of recognition may permit parties to disrupt Suntech's reorganization. Such a result would substantially interfere with our ability to pursue a reorganization and maximize value available for Suntech's creditors since we are presently the only parties with recognized authority to act on Suntech's behalf in these matters.[6]

---

[6] We intend to ultimately seek recognition of a scheme of arrangement to, *inter alia*, ensure that U.S. creditors are treated equally with all of Suntech's similarly situated creditors.

17

## VIII.   Suntech's COMI is the Cayman Islands

48.     As stated above, I am advised by counsel that, to obtain recognition of the

Cayman Proceeding as a "foreign main proceedings" under section 1502(4) of the Bankruptcy

Code, it must be shown that the Cayman Islands is the COMI of Suntech. The sole business of

Suntech is the administration of its restructuring, which activities are based in the Cayman

Islands and include the collection, procurement, management and administration of Suntech's

assets by us, as JPLs. All of this business and all of these activities are being directed by us under

supervision of the Cayman Court and in consultation with the Committee and Suntech's Board of

Directors. To our knowledge, since our appointment,  no person other than ourselves has

otherwise asserted or exercised the right or power to administer the restructuring of Suntech in

connection with the Cayman Proceeding.

49.     We respectfully submit that the following facts, among others, demonstrate that

the COMI of Suntech is in the Cayman Islands:

> a.   Suntech is registered in the Cayman Islands and maintains a registered
>       office in the Cayman Islands.
>
> b.   Suntech is a foreign issuer in the United States and listed its registration as
>       a Cayman Islands company on the face of the filings associated with its
>       offering documents and other recent filings, which are publicly available
>       to third parties.
>
> c.   The statutory books and records and shareholder registry of Suntech are
>       located in the Cayman Islands.
>
> d.   The minute books of Suntech are located in the Cayman Islands.
>
> e.   The stock certificates representing Suntech's shares in PSS are located in
>       the Cayman Islands.
>
> f.   Suntech's statutory annual reports to the Cayman Islands Registrar of
>       Companies are prepared in the Cayman Islands.
>
> g.   The Board of Directors of Suntech held its most recent meeting in the
>       Cayman Islands.
>
> h.   One of the current members of the Board of Directors of Suntech is a
>       Cayman Islands resident.
>
> i.   Suntech holds approximately $3.19 million in a Cayman Islands bank
>       account.

OMM_US:72138085

j. The current business of Suntech is its restructuring, and all restructuring activities, including negotiation of the DIP Financing approved by the Cayman Court are being coordinated through the JPLs in the Cayman Islands, pursuant to the powers vested in them by the Cayman Court.

k. We are officers of the Cayman Court.

l. We have negotiated and authorized the two major contracts entered into during the Cayman Proceeding (the DIP Financing agreement and the RSA), authorized the filing of the Verified Petition and engaged in ongoing negotiations with creditor groups from the Cayman Islands.

m. We have taken action to collect Suntech's accounts receivable, investigated certain intercompany transfers, analyzed claims that might be filed on behalf of Suntech in other entities' insolvency proceedings, and negotiated sublicenses of its PRC export license.

n. We sent notice to all of Suntech's known creditors, informing creditors of the pendency of the Cayman Proceeding, the appointment of the Cayman Islands-based JPLs to oversee the management of the day-to-day affairs of Suntech, and the date, time and Cayman Islands location of the statutory meeting of creditors (which they have been invited to participate in, either in person or otherwise). The notice was sent from the Cayman Islands and listed a Cayman Islands return address for Suntech.

o. Suntech held the statutory meeting of creditors in the Cayman Islands on February 12, 2014.

p. Suntech has held planning and negotiation meetings with creditors in the Cayman Islands.

q. Since our appointment as JPLs, Suntech has been communicating with creditors, shareholders, and the public through our offices in the Cayman Islands.

r. Suntech's major creditors have appeared to support the Cayman Proceeding, and no creditor has objected to the proceedings.

s. Our address is the address listed as Suntech's address on the company's website, and it is where Suntech receives all official notices under the IFC Loan and the Notes and all of Suntech's new agreements, such as the RSA and recent DIP Financing agreement.

t. Any matter relating to the internal affairs of Suntech, having been formed in the Cayman Islands, will be governed by Cayman Islands law. The DIP Financing agreement is governed by Cayman Islands law, and any scheme of arrangement will be governed by Cayman Islands law.

u. Suntech has issued press releases regarding the Cayman Proceeding and our appointment as JPLs. These press releases are posted on Suntech's investor relations section of its website and are filed with the SEC. The face of these filings references Suntech's Cayman Islands address.

19

50.     We are also advised by counsel that, to obtain recognition of the Cayman Proceeding as a foreign nonmain proceeding under section 1502(5) of the Bankruptcy Code, it must be shown that such proceedings are pending in a country where Suntech has an establishment.  We are further advised that an establishment is any place of operations where Suntech carries out nontransitory economic activity.  In the event the Court does not recognize the Cayman Proceeding as a foreign main proceeding, we refer the Court to the facts set forth above as demonstrating that Suntech carries out nontransitory economic activity in the Cayman Islands.

**IX.    <u>Notice.</u>**

51.     As JPLs, we are responsible for effecting notice to stakeholders regarding activities in the Cayman Proceeding.  When giving notice, we provide individual written notice to creditors by e-mail or, if a member's e-mail address is unknown, by facsimile or postal mail. We also publish on Suntech's investor relations webpage information regarding the progress of the Cayman Proceeding.

52.     In our opinions, based on our experience with the Cayman Proceeding, notifying Suntech's stakeholders of legal proceedings in the United States through individual notice to members of the Committee and also notifying investors and creditors through posting of relevant documents on Suntech's investor relations webpage would be an effective means of notifying Suntech's stakeholders, would be familiar to Suntech's stakeholders, and would not be unduly burdensome to Suntech.

[Remainder of page intentionally left blank]

20

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws of the United States of America this 21st day of February , 2014.

_____

David Walker, Joint Provisional Liquidator
of Suntech Power Holdings Co., Ltd. (in
provisional liquidation)

[SIGNATURE PAGE TO DECLARATION]

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws of the United States of America this _21st_ day of _February_, 2014.

Ian Stokoe, Joint Provisional Liquidator of Suntech Power Holdings Co., Ltd. (in provisional liquidation)

[SIGNATURE PAGE TO DECLARATION]