IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 15** |
| | ) | |
| **SUNTECH POWER HOLDINGS CO.,** | ) | **Case No. 14-_____** |
| **LTD. (IN PROVISIONAL** | ) | |
| **LIQUIDATION),** | ) | |
| | ) | |
| **Debtor in a Foreign Proceeding[1].** | ) | |
| | ) | **Hearing Date:** |
| | ) | **Related to Docket Item __** |
| | ) | |

**DECLARATION OF COLIN DOUGLAS McKIE Q.C.**
**IN SUPPORT OF CHAPTER 15 PETITION OF**
**SUNTECH POWER HOLDINGS CO., LTD. (IN PROVISIONAL LIQUIDATION)**
**FOR RECOGNITION OF FOREIGN MAIN PROCEEDING**

I Colin Douglas McKie Q.C. hereby declare, under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

**Introduction**

1      I am a partner of the law firm of Maples and Calder, P.O. Box 309, Ugland House, South Church Street, George Town, Grand Cayman, KY1-1104, Cayman Islands.   Maples and Calder is a law firm that advises financial, institutional and business clients worldwide on the laws of the Cayman Islands, Ireland and the British Virgin Islands.  As of 31 January 2014, Maples and Calder employed over 257 attorneys, 103 of whom are based in the Cayman Islands. I practise law in the Cayman Islands and I advise on the laws of the Cayman Islands.

2      My practice in the Cayman Islands primarily involves commercial litigation and contentious and non-contentious insolvency and restructuring, with a focus on the financial services sector

---

[1]      The last four digits of the registration number for Suntech Power Holdings Co., Ltd. (in provisional liquidation) are 3146.  Its registered office is located at Level 5 Strathvale House, 90 North Church Street, George Town, Grand Cayman, KY1-1104, Cayman Islands.

and international groups of companies. I have considerable experience in litigation relating to or involving Cayman Islands companies, including publicly traded holding companies such as Suntech Power Holdings Co., Ltd (in provisional liquidation) (the "**Company**").

3    I am a graduate of Corpus Christi College, University of Oxford in the United Kingdom. In 1994 I was admitted as a solicitor, and subsequently as a solicitor-advocate, in England and Wales[2]. I have been admitted as an attorney at law in the Cayman Islands since 1999. In 2013 I was appointed as Queen's Counsel (Q.C.)[3].

4    Since 2010 I have been a member of the Rules Committee for the Grand Court of the Cayman Islands ("**Grand Court**") which is a statutory body authorised by the Grand Court Law (2008 Revision) ("**Grand Court Law**") to make rules for the Grand Court governing its practice and procedure generally, and of the Insolvency Rules Committee which is a statutory body authorised by the Companies Law (2013 Revision) ("**Companies Law**") and the Exempted Limited Partnership Law (2013 Revision) to make rules for the Grand Court governing the practice and procedure relating to the winding up of companies and partnerships. I have been a consulting editor of the Cayman Islands Law Reports ("**CILR**") since 2002.

5    I have previously provided expert evidence on Cayman Islands law for numerous foreign courts, including the Supreme Court of the State of New York. Most recently, I acted for the joint provisional liquidators (later appointed as joint official liquidators) of Trident Microsystems (Far East) Ltd., a Cayman Islands company that was in provisional liquidation (later official liquidation) in the Cayman Islands and also in Chapter 11 before the United States Bankruptcy Court for the District of Delaware. In those Chapter 11 proceedings I provided expert evidence to the Delaware Bankruptcy Court. Although I am not a U.S.

---

[2]    I am also admitted as a solicitor, solicitor-advocate and (formerly) licensed insolvency practitioner in the British Virgin Islands and as a solicitor in St Kitts and Nevis, Anguilla and St Vincent, although I no longer practise the laws of jurisdictions other than the Cayman Islands.

[3]    By way of explanation, Queen's Counsel (or King's Counsel during the reign of a male sovereign), are legal practitioners from Commonwealth jurisdictions appointed by letters patent to be one of Her Majesty's counsel. In *A-G for Dominion of Canada v A-G for Province of Ontario* [1898] AC 247 at 252, HL, Lord Watson explained the position as follows: "*The position occupied by Queen's Counsel is ... in the nature of an honour or dignity to this extent, that it is a mark and recognition by the Sovereign of the professional eminence of the counsel*".

attorney, I am familiar with the provisions of Chapter 15 of the United States Bankruptcy Code (**"Chapter 15"**).

**Background**

6    I am aware that on 14 October 2013, Trondheim Capital Partners, L.P., Michael Meixler, Longball Holdings, LLC and Jiangsu Liquidators, LLC (the **"Chapter 7 Petitioners"**) commenced an involuntary Chapter 7 proceeding against the Company in the United States Bankruptcy Court for the Southern District of New York, captioned *In re Suntech Power Holdings Co., Ltd.*, Case No. 13-13350 (SMB) (the **"Chapter 7 Proceedings"**).

7    On 5 November 2013 Christopher Michael Nacson, the chairman and a director of the Company presented (i.e. filed) a Petition to the Grand Court for the winding-up of the Company as a creditor of the Company on the grounds of insolvency and for the appointment of Messrs David A. K. Walker and Ian Stokoe as joint official liquidators. The Company did not oppose the Petition. On the same day the Company also applied to the Grand Court by way of Summons for the appointment of Mr Walker and Mr Stokoe as joint provisional liquidators of the Company (the **"Cayman Proceedings"**). On 7 November 2013 by Order of the Grand Court (the **"Order"**) Mr Walker and Mr Stokoe were appointed as joint provisional liquidators of the Company (**"JPLs"**). I explain the distinction between the appointment of provisional liquidators prior to the appointment of official liquidators at paragraphs 40 to 52 below.

8    True copies of the Petition, Summons and Order in the Cayman Proceedings are exhibited hereto as Exhibit CDM-1. Maples and Calder acts as Cayman Islands counsel to the Company and to the JPLs in the Cayman Proceedings.

9    Subsequently, the Company, the JPLs, certain creditors of the Company, including Clearwater Capital Partners Fund III, L.P., Clearwater Capital Partners Fund III (Annex), L.P., Clearwater Capital Partners Emerging Markets, L.P., Spinnaker Capital Limited (as investment manager for various noteholding creditors of the Company), and the Chapter 7 Petitioners reached an agreement with regard to the Chapter 7 Proceedings, the Cayman

Proceedings and the restructuring of the Company which provided, among other things, that the JPLs would file a Chapter 15 proceeding in the United States Bankruptcy Court for the Southern District of New York on or before 21 February 2014.

10    The JPLs may only exercise such powers as are conferred by the Order appointing them (see Section 104(4) of the Companies Law) and they are specifically authorised pursuant to paragraph 3 of the Order to seek relief under Chapter 15, and to take such steps in connection therewith as the JPLs consider to be appropriate. True and correct copies of the relevant sections of the Companies Law, including Part V of the Companies Law (the significance of which I will discuss in more detail below), is attached hereto as Exhibit CDM-2.

11    I have been asked by the JPLs to explain in general terms the relevant substantive Cayman Islands law and procedural rules relating to the liquidation and dissolution of insolvent Cayman Islands companies, and in particular how they relate to the Company, for the purpose of filing a petition for recognition of the Cayman Proceedings as a foreign main proceeding under Chapter 15. The issues on which I am asked to opine fall well within my professional experience.

**The Law Governing the Cayman Proceedings**

Sources of Cayman Islands Law

12    The Cayman Islands are a British Overseas Territory, acquired by settlement (i.e. as opposed to a conquered colony or a ceded colony). The original English settlers who came to the Cayman Islands are deemed to have brought with them such portions of English common law, rules of equity and statute law as may have been applicable to their new situation and the condition of the colony[4] at the time of its settlement. The result of this is that the English

---

[4]    The outdated term "colony" remains interchangeable with the modern term "British Overseas Territory" in British statute law, although the latter is invariably used in both formal and informal documents. See Hendry and Dickson, *British Overseas Territories Law* (Hart Publishing Ltd, 2011).

4

common law and rules of equity existing at that time form part of the law of the Cayman Islands[5].

13    Initially administered as a dependency of the larger colony of Jamaica, formalised by the Cayman Islands Act of 1863, the Cayman Islands have been administered as a separate territory since the passing of the Jamaica Independence Act of 1962. The Cayman Islands are now a distinct legal jurisdiction whose constitutional relationship with the United Kingdom, the sovereign power, is defined by a constitution[6].

14    The laws of the Cayman Islands therefore derive from several sources:

14.1    Local statutes passed by the Legislative Assembly[7] or its predecessors and approved by the Governor of the Cayman Islands[8]. This includes statutes such as the Companies Law and the Grand Court Law.

14.2    Subordinate legislation enacted pursuant to local statutes. This includes the Company Winding Up Rules, 2008 (as amended) ("**CWR**"), the Insolvency Practitioners Regulations 2008 (as amended) ("**Regulations**") and the Grand Court Rules 1995 (as

---

[5]    Except to the extent that they were inapplicable to the situation of the colonists and the condition of the colony at the time of its settlement or they have been amended or abrogated by local legislation or by United Kingdom statutes that have been expressly extended to the Cayman Islands or by Privy Council orders that are applicable to the Cayman Islands.

[6]    The latest having been established pursuant to the Cayman Islands Constitution Order 2009, S.I. 2009 No. 1379 by Her Majesty the Queen in exercise of the powers conferred upon Her by the West Indies Act of 1962, by and with the advice of Her Privy Council and acting on the recommendation of United Kingdom Ministers, which came into force by way of proclamation on 6 November 2009 (the "**Constitution**").

[7]    Article 81 of the Constitution reserves to the Governor of the Cayman Islands powers to enact legislation, with the prior approval of one of the United Kingdom's Secretaries of State, in exceptional circumstances. Article 125 of the Constitution also reserves to Her Majesty full power to make laws for the peace, order and good government of the Cayman Islands. In practice, that power is exercised by Her Majesty on the recommendation of Her Majesty's Privy Council.

[8]    To the extent that any local statute (or any subordinate legislation made under such statute) is or shall be repugnant to any provision of any statute passed by the UK parliament that has been extended to the Cayman Islands, or to any order of the Privy Council applicable to the Cayman Islands, the UK statute or Privy Council order prevails – see s. 2 of the Colonial Laws Validity Act 1865 and *Attorney General of the Cayman Islands v Euro Bank Corp.* [2002] CILR 334.

amended). True and correct copies of the relevant sections of the CWR and Regulations referred to below are included within Exhibit CDM-2 attached hereto.

14.3    Statutes passed by the parliament of the United Kingdom that have been expressly extended to the Cayman Islands.

14.4    Orders of Her Majesty's Privy Council that are applicable to the Cayman Islands.

14.5    Any relevant remaining English and British Commonwealth common law and rules of equity established by settlement not having been replaced by local or U.K. statute.

15    In respect of the common law, the Courts of the Cayman Islands follow English and British Commonwealth common law and equity, save where to do so would be inconsistent with relevant legislation.

Local Legislation

16    The United Kingdom parliament usually only extends statutes to its territories, such as the Cayman Islands, in areas for which the United Kingdom retains responsibility, such as foreign affairs, or when the United Kingdom regarded the statute in question as being of sufficient importance and general application that it ought to be applied to all territories, or where the territory in question specifically requested that it do so. In practice, few such statutes have been extended to the Cayman Islands.

17    However, the Legislative Assembly has frequently enacted local legislation that reproduces English legislation to a greater or lesser extent. The same is true of many other territories and members, and former members, of the British Commonwealth. Consequently, when the Courts of the Cayman Islands are considering provisions of local legislation that are the same, or substantially the same, as provisions of English (or British Commonwealth) statutes they frequently refer to and rely upon relevant decisions of the English (or British Commonwealth) superior courts of record interpreting those provisions of the English (or British Commonwealth) statutes, absent local case law.

Cayman Islands judicial system

18    The Grand Court and the Court of Appeal of the Cayman Islands are constituted by and exercise jurisdiction and powers conferred under the Constitution as superior courts of record, with such further jurisdiction and powers established pursuant to the Grand Court Law and the Court of Appeal Law (2011 Revision) respectively.

19    Subject to certain laws, the Grand Court possesses and exercises a jurisdiction within the Cayman Islands similar to that which is vested in, or is capable of being exercised in England, by the English High Court and the Divisional Courts of that Court.  Subject to certain restrictions, an appeal will lie to the Court of Appeal without requiring the leave of the Grand Court or of the Court of Appeal from any final, civil judgment, decree, order or declaration of the Grand Court.  Subject to certain exceptions, an appeal will lie to the Court of Appeal only with the leave of the Grand Court or of the Court of Appeal from any interlocutory, civil judgment, decree, order or declaration of the Grand Court.

20    A further appeal may lie to the Privy Council in respect of a judgment, decree, order or declaration of the Court of Appeal.  Because the European Convention on Human Rights has been extended to the Cayman Islands, a further appeal may lie to the European Court of Human Rights if it raises appealable human rights issues under the Convention[9].

*Stare decisis*

21    The legal system of the Cayman Islands is an English-style common-law system based upon the doctrine of precedent.

22    The *rationes decidendi* of decisions of the Privy Council in appeals from the Cayman Islands are binding on the Cayman Islands Courts in subsequent cases.  Where the law is the same, the Grand Court also considers itself bound by the Privy Council decisions from other countries.  The *rationes decidendi* of decisions of the Court of Appeal are binding on itself

---

[9]    See, for instance, *Ebanks v United Kingdom* [2010] 1 CILR 200 (ECHR), on appeal from *Ebanks v R* [2006] CILR 198 (PC).

and on the Grand Court in subsequent cases. The *rationes decidendi* of decisions of the Grand Court are normally followed by itself in subsequent cases[10].

23    In the absence of specific Cayman Islands binding authority, the Cayman Islands Courts will regard as highly persuasive relevant decisions of the superior courts of record of England and Wales, although such decisions are not, strictly speaking, binding on the Cayman Islands Courts. Similarly, relevant decisions of the senior courts of record of the other jurisdictions of the United Kingdom and of members (and former members) of the British Commonwealth are likely to have persuasive value in the Cayman Islands Courts where the legal principle under consideration is the same or substantially the same.

24    All things being equal, the more senior the English, United Kingdom, or British Commonwealth court concerned, the more persuasive value it will carry in the Cayman Islands Courts. Important cases from the Courts of the Cayman Island are published in the CILR.

Companies Law

25    Cayman Islands companies are incorporated pursuant to the Companies Law[11]. They are all required to maintain registered offices in the Cayman Islands to which all communications and notices may be addressed[12] and where the administration of annual filings and the payment of annual fees with the Cayman Islands Registrar of Companies (**"Registrar"**) are usually attended to[13]. Any document used in legal proceedings required to be formally served on a company may be served by hand or by prepaid post on the company at its registered office[14]. Cayman Islands companies are also required to maintain certain statutory registers (**"Registers"**), namely a Register of Members (i.e. shareholders), a Register of Mortgages and

---

[10]    See, for instance, *Re Alibaba.com Limited* [2012] 1 CILR 272.

[11]    It is also possible to be incorporated by statute and by Royal Charter. For the purposes of this declaration references to "companies" means companies incorporated pursuant to the Companies Law.

[12]    Section 50(1) of the Companies Law.

[13]    Save for companies registered as "associations not for profit" by license of the Governor of the Cayman Islands pursuant to section 80 of the Companies Law and to which certain exceptions apply.

[14]    Section 70 of the Companies Law.

Charges and a Register of Directors (including alternate directors and officers)[15]. I discuss the legislative history of the Companies Law below.

26    From 1864 to 1962, the relevant companies statute for the Cayman Islands was the Jamaica Companies Law 1864, as amended from time to time.  In 1961 the local legislature of the Cayman Islands enacted the Companies Law (Law 3 of 1961) Cap. 22; it came into force on 1 January 1962 and at that time the Jamaican Companies Law ceased to apply.  Since then that statute has been variously amended, revised and consolidated.  All further references in this affidavit to the Companies Law means the Companies Law 1961 as amended and revised[16], unless otherwise stated.

27    The draftsman of the Companies Law 1961 intended to create an entirely new piece of legislation for the purposes of attracting financial services business and other international businesses to the Cayman Islands, which would include banking, trust company, legal, accounting, insurance management, mutual fund administration and other professional service providers and facilities, and to generate revenue for the Cayman Islands Government.  In so doing, he drew heavily upon two particular sources, namely the English Companies Act 1948 (being the then-current statute in England whose origins lay in the English Companies Act 1862) and the Jamaican Companies Law 1864 (as amended) (being the then-current statute in Jamaica and which was itself based on the 1862 Act).

28    Certain provisions of the Companies Law 1961 reproduce provisions of the 1948 Act verbatim, or very nearly so.  Relevant decisions of the English courts relating to the true meaning and effect of those provisions of the 1948 Act[17] are accordingly persuasive with respect to the equivalent provisions of the Companies Law.

29    Other parts of the Companies Law 1961 reproduce provisions of the 1862 Act (i.e. via the Jamaican Companies Law) verbatim, or very nearly so, and which differ from the provisions

---

[15]    Sections 40, 54 and 55 of the Companies Law, respectively.

[16]    Currently the Companies Law (2013 Revision).

[17]    And, where those sections have been reproduced in subsequent English statutes, the decisions of the English courts in respect those sections.  The current English statute is the Companies Act 2006.

of the 1948 Act (or its successors). Relevant decisions of the English courts relating to the true meaning and effect of those provisions of the 1862 Act[18] are accordingly persuasive with respect to the equivalent provisions of the Companies Law.

30    Finally, there are provisions of the Companies Law which have been introduced since 1961 that are unique to the Cayman Islands statute and reflect the development of the Cayman Islands as a leading jurisdiction for the formation of investment funds, structured finance vehicles and Cayman Islands holding companies seeking to raise capital.

31    One such provision is the ability to establish exempted companies, which are the vehicle of choice for the vast majority of companies (including publicly listed companies, investment funds, etc.) registered in the Cayman Islands. By way of explanation, a company incorporated under the Companies Law may be established as an "exempted" company or as an "ordinary" company. Both types of company are required to make certain annual statutory filings with the Registrar. However, an exempted company differs in that it is prohibited from undertaking business in the Cayman Islands except in furtherance of its business carried on outside the Cayman Islands[19], specifically it may effect and conclude contracts in the Cayman Islands and exercise in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands (so it may employ staff or agents in the Cayman Islands or have offices in the Cayman Islands in furtherance of its business outside the Cayman Islands once it has obtained any appropriate trade licences).

32    One of the key aspects that makes the Cayman Islands legal system creditor-friendly include the protection of creditors' rights and certainty as to the enforceability of contractual rights on insolvency. By way of example, the Companies Law specifically recognises and protects the rights of secured creditors to enforce their security in accordance with its terms, despite the debtor's insolvency, and secured creditors are able to realise their security outside of any

---

[18]    Or, where relevant, its successors.

[19]    Requirements are such that the operation of the proposed company must be "... *conducted mainly outside the* [Cayman] *Islands*". See sections 163 and 165 of the Companies Law. Exempted companies are also required to file an annual return with the Registrar to this effect, along with its annual fees, pursuant to section 168(b) of the Companies Law.

Cayman Islands insolvency process commenced in relation to the debtor[20]. In addition, the Companies Law specifically recognises that bi-lateral and multilateral arrangements regarding set-off or netting between a company and any person or persons are enforceable on the company's insolvency[21], and that the Court will give effect to non-petition covenants[22].

33    These unique provisions are of course assisted by the Cayman Islands having a well-established and highly experienced professional infrastructure that is known for its depth and breadth of experience in cross-border issues as well as its responsiveness and efficiency.

<u>Legislation for the winding up of Cayman Islands companies</u>

34    The substantive law relating to the winding up of companies incorporated in the Cayman Islands is contained in Part V of the Companies Law[23]. The provisions of Part V apply to companies formed and registered under the Companies Law or its predecessors, including companies that are formed as exempted companies, and foreign companies in respect of which the Grand Court has made a winding up order.

35    The Companies Law provides for three different modes for winding up Cayman Islands companies although there is considerable overlap of provisions relating to each system and relating to the powers and duties of the liquidators. They are: (1) winding up by order of the Grand Court, (2) voluntary winding-up initiated by a resolution of the shareholders, and (3) voluntary winding-up initiated by a resolution of the shareholders but subject to the supervision of the Grand Court. In this case the Company was sought to be wound up by order of the Grand Court and therefore the provisions relating to the other two modes of winding up are not relevant.

---

[20]    Section 142 of the Companies Law.

[21]    Section 140(2) of the Companies Law.

[22]    See s. 95(2) of the Companies Law. However, this section has not been the subject of any reported decision and so the precise ambit of this section is not without doubt. However, the better view is that covenants from creditors not to present a winding up petition against a company are, in principle, enforceable.

[23]    There are additional statutes relating to the winding up of those Cayman Islands companies that are regulated by the Cayman Islands Monetary Authority ("**CIMA**"), such as banks and insurance companies. However, the Company was not regulated by CIMA.

36    The substantive law contained in Part V of the Companies Law is supplemented by detailed rules governing the practice and procedure for insolvencies of companies that are set out in the CWR, the Regulations and the Foreign Bankruptcy Proceedings (International Co-operation) Rules 2008, together with a detailed body of local case law.  True copies of the case law that I refer to herein are attached hereto as Exhibit CDM-3.

37    Part XVII of the Companies Law ('International Co-operation')[24] enables the Grand Court to make orders for the purposes of: recognising a foreign representative's[25] right to act generally on behalf of, or in the name of, a foreign company in the Cayman Islands;  to enjoin the commencement or to stay the continuation of legal proceedings or enforcement of any judgment against the debtor; to require a person in possession of information relating to the business or affairs of the debtor to be examined by, and produce documents to, him, and to order the turning over to him of any property belonging to the debtor.  The foreign representative must have been appointed in foreign bankruptcy proceedings, which would include proceedings for the reorganisation or rehabilitation of an insolvent debtor[26].

38    On an application for recognition under Part XVII, the Grand Court will be guided by matters which best assure an economic and expeditious administration of the debtor's estate[27], consistent with:

    38.1    The just treatment of all holders of claims against or interests in a debtor's estate wherever they may be domiciled;

    38.2    The protection of claim holders in the Cayman Islands against prejudice and inconvenience in the processing of claims in the foreign bankruptcy proceeding;

---

[24]    Part XVII is closely modelled on the (former) s. 304 of the US Bankruptcy Code.

[25]    Meaning trustees, liquidators or other officials appointed in respect of a debtor, being a foreign corporation or other legal entity subject to a foreign bankruptcy proceeding in the country in which it is incorporated or established.  See sections 240 and 241 of the Companies Law and *Re Bernard L. Madoff Investment Securities LLC* [2010] 1 CILR 231.

[26]    Section 240 of the Companies Law.

[27]    Section 242 of the Companies Law.

38.3    The prevention of preferential or fraudulent dispositions of property comprised in the debtor's estate;

38.4    The distribution of the debtor's estate among creditors substantially in accordance with the order prescribed by Part V of the Companies Law;

38.5    The recognition and enforcement of security interests created by the debtor;

38.6    The non-enforcement of foreign taxes, fines and penalties; and

38.7    Comity (that is, that the Grand Court and the foreign bankruptcy court would expect that the other would seek and grant assistance in corporate insolvency proceedings for the purpose of achieving commonly held policy objectives, notwithstanding the application of their own laws would not necessarily produce exactly the same or even similar economic result[28]).

39    Following the principles set out in the decision of the Privy Council in *Cambridge Gas*[29], which has been followed in the Cayman Islands[30], as a matter of common law the Grand Court will recognise the principle of "universality" in bankruptcy proceedings, that is, that there should only be a single bankruptcy proceeding with universal application and in which all creditors should be entitled and required to prove. The Grand Court will therefore give effect to this principle by recognising and, to an extent that doing so would not be outside the scope of Part XVII, actively assist the foreign representative in corporate insolvency proceedings in the country of the principle liquidation to act on behalf of the foreign insolvent company in the Cayman Islands.

---

[28]    See *Picard v Primeo Fund (in official liquidation)* (unreported) 14 January 2013, at page 19.

[29]    *Cambridge Gas Transportation Corporation v Official Committee of Unsecured Creditors of Navigator Holdings plc* [2007] 1 AC 508 (PC).

[30]    See *Picard*, supra.

Winding-Up Proceedings and Appointment of Provisional Liquidators

40    Pursuant to section 92 of the Companies Law, a company may be wound up by the Grand
      Court if, among other things, the company is unable to pay its debts. The test that is applied
      to determine whether a company is unable to pay its debts is based on a cash-flow test of
      solvency.

41    Pursuant to section 94 of the Companies Law a creditor (including any contingent or
      prospective creditor), contributory (which for all practical purposes means a shareholder), or
      the company[31] can petition for the compulsory winding-up of a company on the grounds set
      out in section 92[32].

42    At or shortly after the presentation of a winding up petition the Grand Court will fix a date for
      the petition to be heard[33]. In the case of a winding up petition presented on the basis that the
      company is insolvent the date is usually fixed for about four to eight weeks after the petition
      was filed.

43    At any time after the presentation of the winding up petition, pursuant to Section 104(1) and
      (2) of the Companies Law the Grand Court has jurisdiction to appoint provisional liquidators
      on the application of a creditor or contributory on the grounds that:

      43.1    There is a *prima-facie* case for making a winding up order; and

---

[31]    The orthodox common law position is that a company can only petition for its own winding up where
the directors have obtained the authorisation of the shareholders to do so by way of a shareholder resolution –
see *Re Global Opportunity Fund* [1997] CILR N-7 applying *Re Emmadart* [1979] 1 All E.R. 599. Section
94(2) of the Companies Law was introduced in 2009 to allow companies incorporated after 1 March 2009 to
include express authorisation in their Articles of Association permitting the directors to file a winding up
petition, without the resolution of the shareholders passed at a general meeting. Neither was of assistance to
the Company in the circumstances as it was incorporated on 8 August 2005 and, being a publicly listed
company, it would have been difficult to obtain a shareholder resolution on an expedited basis. While there is
Cayman Islands authority for the proposition that the directors of an insolvent company have standing to bring
a winding up petition without the need for shareholder authorisation  - *Re China Milk Products Group Limited*
[2011] 2 CILR 61 – the correctness of this decision is open to doubt.

[32]    CIMA may also do so if the company is carrying on regulated business.

[33]    If, however, the Grand Court appoints provisional liquidators immediately upon the presentation of the
petition (as happened here) then it may either fix a date for the hearing of the petition or (as here) it may
adjourn it indefinitely. See paragraph 49 below.

43.2    The appointment of the provisional liquidators is necessary in order to:

    (a)    prevent the dissipation or misuse of the company's assets;

    (b)    prevent the oppression of minority shareholders; or

    (c)    prevent mismanagement or misconduct on the part of the company's directors.

44    In addition, section 104(3) of the Companies Law provides that the company itself can apply for the appointment of provisional liquidators on the basis that:

44.1    the company is or is likely to become unable to pay its debts; and

44.2    the company intends to present a compromise or arrangement to its creditors.

45    The purpose of a provisional liquidator under Section 104(3) is therefore to facilitate and implement a restructuring if possible.    For this purpose the Grand Court will appoint provisional liquidators and will give the provisional liquidator all necessary powers to achieve this end provided it is satisfied that such appointment is for the benefit of those having the financial interests in the company, i.e. that the order would be for the general benefit of creditors, and subject to the creditors' prior interests, the interests of shareholders.

46    A provisional liquidator is an officer of the Grand Court and is an agent of the company.    He owes fiduciary duties to the company to act for proper purposes, in good faith and in the interests of the company as a whole.    The interests of the company as a whole are represented by the interests of the unsecured creditors of the company where the company is insolvent, the unsecured creditors and shareholders where the company is of doubtful solvency, or the shareholders where the company is solvent.    He does not represent any creditor or class of creditors or any shareholder or class of shareholders; he is required to be independent of the management of the company and its creditors and is required to behave in an even-handed fashion between creditors or groups of creditors amongst themselves.    Nevertheless, a provisional liquidator will often canvas the views of the unsecured creditors, and a committee of unsecured creditors will usually be constituted to facilitate that.

47    If the Grand Court appoints a provisional liquidator, then pursuant to section 97(1) of the Companies Law "...*no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the company except with leave of the* [Grand] *Court...*" pending the hearing of the petition, i.e. during the currency of the provisional liquidation. This provision restrains proceedings in the Cayman Islands Courts, but it does not apply to proceedings in courts outside the Cayman Islands. However, the Grand Court may restrain any person that is subject to its jurisdiction from continuing or commencing proceedings against the company outside the jurisdiction that would distort the distribution of the company's assets by exercise of its inherent but discretionary power to restrain foreign proceedings[34]. The Grand Court will claim jurisdiction over any person that is present in the Cayman Islands or has submitted to the jurisdiction (for example by filing a claim in the liquidation[35]).

48    The purpose of section 97(1) is to ensure that creditors are treated equally and prevent a disorderly scramble for assets and to protect the jurisdiction of the Cayman Islands Courts in the administration of the insolvent estate. It does not prevent a creditor from asking the Grand Court to convert the provisional liquidation into an official liquidation and wind up the company. However, this section has no application to secured creditors who are entitled to take steps to enforce their security notwithstanding the provisional liquidation.

49    If the Grand Court has already appointed a provisional liquidator then at the hearing of the winding up petition the Grand Court may make one of the following orders:

49.1    adjourn the adjudication of the petition for an indefinite period to enable the provisional liquidation to continue in order to facilitate the restructuring. The company and any creditor or shareholder will then be at liberty to apply to the Grand Court at a future date to set a new hearing date for the adjudication of the petition;

---

[34]    See *Cleaver v. Delta American Reinsurance Co.* [2001] 2 AC 328 (PC), on appeal from the Cayman Islands Court of Appeal and also Dicey, Morris & Collins, *The Conflict of Laws* (15th edn, 2012) at 30-082 which refers to the equivalent provision of the English Insolvency Act of 1986.

[35]    See *Rubin v. Eurofinance SA* [2013] 1 AC 236 (SC).

49.2     adjourn the adjudication of the petition to a specified date from time to time, on which hearing dates the Grand Court will review the conduct of the provisional liquidation and determine whether it should continue, the company should be wound up or the proceeding dismissed and the provisional liquidator discharged.    Creditors and/or shareholders (depending on whether the company is solvent, insolvent or of doubtful solvency) are entitled to be heard on these return hearing dates and put forward their views to the Grand Court.

49.3     dismiss the petition (either because the company has been able to resolve its financial difficulties whilst in provisional liquidation, or for any other reason).    If the Grand Court dismisses the petition then the appointment of the provisional liquidator will be discharged and the directors of the company will resume the management of the company's affairs; or

49.4     make a winding-up order and appoint official liquidators to wind up the company.

50    Before a winding up petition presented on the grounds of insolvency may be heard, the Grand Court must be satisfied that the date for the hearing of the petition has been properly advertised.    Where the company carries on business outside the Cayman Islands, the Grand Court will typically direct that the hearing date of the petition must be advertised at least seven business days before the hearing date in a newspaper having circulation in a country where it is most likely to come to the attention of the company's creditors (see CWR O.3, r.6).

51    The creditors of the company are entitled to appear and be heard on the return date for the hearing of the petition to put forward their views to the Grand Court.

52    Pursuant to section 100(2) of the Companies Law, in the event a winding up order is made, the winding-up of the company is deemed to have commenced at the time of the presentation of the petition.

<u>The Cayman Proceedings are a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code</u>

53    I am advised by U.S. Counsel that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

> "... *a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganisation or liquidation.*"
>
> 11 U.S.C. § 101(23)

54    In my view the Cayman Proceedings satisfy the above definition.  The Cayman Proceedings were commenced pursuant to Part V of the Companies Law.  A provisional liquidation is a court-supervised process[36] that is commonly used to implement the restructuring of an insolvent company in the Cayman Islands and in support of US Bankruptcy proceedings[37].  It is also an interim proceeding in the sense that the outcome of the Cayman Proceedings will either be the return of the Company to solvency and the dismissal of the Petition, or the hearing of the Petition, which if granted will place of the Company into official liquidation and wound up.  Either way, the rights of the creditors and contributories (i.e. shareholders) *vis-à-vis* the debtor will be determined together.

<u>The JPLs are "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code</u>

55    I am also advised by U.S. Counsel that "foreign representative" is defined in section 101(23) of the Bankruptcy Code to mean:

> "... *a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.*"

---

[36]    See also paragraph 62 below.

[37]    See for example, *Re Fruit of the Loom* [2000] CILR N-7; *Re Trident Microsystems (Far East) Ltd.* [2012] 1 CILR 424 and *Arc Capital LLC v Asia Pacific Limited* (unreported) 31 January 2013.

56    In my view the JPLs satisfy the above definition.  As officers of the Grand Court, the JPLs are duly authorised and empowered by the Court by reason of the Order to administer restructuring of the Company as well as to act as duly authorised representatives of the Company in the Cayman Proceedings.

Cayman Islands law relevant to the determination of COMI

57    I am further advised by U.S. Counsel that certain other provisions of Cayman Islands law are relevant to the determination of the Debtor's centre of main interests ("**COMI**") under section 1517 of the U.S. Bankruptcy Code.  I have set out an overview of the relevant Cayman Islands law considerations below.

58    The Company was incorporated as a Cayman Islands exempted company limited by shares on 8 August 2005 under Section 163 of the Companies Law.  For the reasons I explained above, on its incorporation it was restricted from carrying on its business within the Cayman Islands. However, although the Company did not maintain staffed offices in the Cayman Islands prior to the commencement of the Cayman Proceedings, this did not mean that the Company carried out no activities or had no presence at all in this jurisdiction.  For example, the Company's registered office prior to the commencement of the Cayman Proceedings was situate at Ugland House, George Town, Grand Cayman where the administration of the Company's annual filings with the Registrar was attended to. Further, all of the Company's Registers were maintained in the Cayman Islands, including its Register of Members although exempted companies are not specifically obliged under the Companies Law to do so[38].

59    However, the restriction on the carrying on of an exempted company's business inside the Cayman Islands, only in support of its business outside the Cayman Islands, does not apply to the conduct of the restructuring of that company by provisional liquidators in the Cayman Islands under the supervision of the Grand Court.  I explain further below.

---

[38]    It is judicially accepted that situs of the shares of a Cayman Islands company is the place of its incorporation, i.e. the Cayman Islands, see *160088 Canada Incorporated v. Socoa International Limited* [1998] CILR 256.

60    Since the commencement of the Cayman Proceedings, the Company's registered office was transferred to the offices of the JPLs at Strathvale House, George Town, Grand Cayman. The JPLs are Cayman Islands residents.  It is a requirement of the Regulations that at least one official liquidator be resident in the Cayman Islands[39]. Under the Order appointing them, the JPLs were granted extensive powers and were authorised to:

60.1    monitor, oversee and supervise the directors' management of the day to day business of the Company and the business of the Company's direct and indirect subsidiaries, including without limitation Power Solar System Co., Ltd ("**PSS**"), Wuxi Suntech Power Co., Ltd ("**Wuxi Suntech**") and Suntech Power International Limited ("**SPI**");

60.2    do all acts and execute, in the name and on behalf of the Company, all deeds, receipts and other documents and for that purpose to use, when necessary, the Company seal;

60.3    take possession of, collect and get in the property of the Company and for that purpose to demand all debts due;

60.4    take possession of, collect and get in the books and records of the Company, including the accounting and statutory records;

60.5    exercise any and all rights that the Company may have as a shareholder of its subsidiaries or any other entities in which it has invested, in the name and on behalf of the Company, including, but not limited to, exercising voting rights of the Company in its subsidiaries, including without limitation PSS, Wuxi Suntech and SPI;

60.6    deal with all questions in any way relating to or affecting the assets or the restructuring of the Company;

60.7    do all such things as may be necessary or expedient for the protection or recovery of the Company's property and assets and those of its subsidiaries at law or in equity in such jurisdictions as they may consider to be appropriate;

---

[39]    Although the Regulations do not expressly apply to provisional liquidators, in practice, the Grand Court requires provisional liquidators to fulfil these requirements. See Regulation 5(1)(a).

60.8    supervise the operation and/or opening and/or closing of any bank accounts in the name and on behalf of the Company;

60.9    open any bank accounts on behalf of the Company for the purpose of paying the costs and expenses of the Cayman Proceedings;

60.10    draw, accept, make and indorse any bill of exchange or promissory note or borrow funds for the purpose of the day to day expenses of the Cayman Proceedings, in the name and on behalf of the Company, with the same effect with the respect of the Company's liability as if the bill or note had been drawn, accepted, made or indorsed or the loan had been entered into by or on behalf of the Company in the course of its business;

60.11    communicate with and carry out any necessary filings with regulatory bodies as appropriate, including, without limitation, the Cayman Islands Companies Registry, CIMA, the New York Stock Exchange and the US Securities and Exchange Commission, in the name and on behalf of the Company;

60.12    make payments to creditors which may have the effect of preferring a creditor, in order to minimise the interruption to the day-to-day activities of the Company and its subsidiaries;

60.13    prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against the estate of such contributory, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt, insolvent or sequestrated contributory and rateably with the other separate creditors;

60.14    take such steps as the JPLs may consider appropriate in respect of the following legal proceedings, in the name and on behalf of the Company:

   (a)    The Chapter 7 Proceedings;

(b) *Trondheim Capital Partners, L.P. and Michael Meixler v Suntech Power Holdings Co., Ltd.*, U.S. District Court for the Southern District of New York, Case No 13-CV-4668 (RPP)(DF);

(c) *Marcus & Jessica Dugaw, Husband and Wife, and the Marital Community Composed thereof v Suntech Power Holdings Co., Ltd.*, U.S. District Court for the Southern District of New York, Case No. 13-CV-5608 (RPP)(DF);

(d) *Energy Conversion Devices Liquidation Trust, by and through its Liquidating Trustee, John Madden v Trina Solar Limited, Trina Solar (U.S.), Inc., Yingli Green Energy Holding Company Limited, Yingli Green Energy Americas, Inc., Suntech Power Holdings Co., Ltd., Suntech America, Inc.*, U.S. District Court Eastern District of Michigan Southern Division, Civil Action No. 13-cv-14241;

(e) *Solyndra LLC vs. Suntech Power Holdings Co., Ltd., Suntech America, Inc., Trina Solar Limited, Trina Solar (U.S.), Inc., Yingli Green Energy Holding Company Limited, Yingli Green Energy Americas, Inc.*, U.S. District Court for the Northern District of California, Case No. 12-5272;

(f) *Scott Bruce v. Suntech Power Holdings Co., Ltd.*, U.S. District Court for the Northern District of California, Case No. 12-4061; and

(g) *Kent Ji v. Zhengrong Shi, et al.*, U.S. District Court for the Northern District of California, Case No. 12-6409;

60.15 discharge debts incurred by the Company after the commencement of these proceedings as expenses or disbursements properly incurred in the Cayman Proceedings;

60.16 engage staff (whether or not as employees of the Company and whether located in the Cayman Islands or elsewhere) to assist them in the performance of their duties for the

22

purpose of the proceedings herein and to remunerate them out of the assets of the Company as an expense of the Cayman Proceedings;

60.17    seek recognition of the provisional liquidation and the appointment of the JPLs in any jurisdiction the JPLs consider necessary, including, but not limited to, the United States Bankruptcy, the British Virgin Islands, the Peoples' Republic of China and Switzerland;

60.18    appoint attorneys and professional advisors, in the Cayman Islands, and elsewhere, as they may consider necessary to advise and assist them in the performance of their duties and to remunerate them for their reasonable fees and expenses out of the assets of the Company as an expense of the Cayman Proceedings;

60.19    authorise the directors to exercise such of the above powers relating to Company on such terms as the JPLs consider fit;

60.20    pay 80% of the JPLs' remuneration on account out of the assets of the Company on the basis set out in the Regulations[40]; and

60.21    do all other things incidental to the exercise of the powers set out above.

61    The remaining powers of the directors of the Company were specified in the Order and were as follows:

61.1    to continue to conduct the ordinary, day-to-day, business operations of the Company;

61.2    to continue to operate the bank accounts of the Company in the ordinary course of the Company's business; and

61.3    subject to the prior approval and consent of the JPLs, to open and close bank accounts on behalf of the Company.

---

[40]    Per Regulation 10(2).

However, the directors of the Company may only exercise these powers subject to the supervision of the JPLs.

62    The Grand Court exercises close supervision of the Cayman Proceedings and the JPLs and, as such, it expects to be regularly updated. The JPLs have already filed a report on the conduct of the first six weeks of the Cayman Proceedings, and expect to file further reports at such intervals as the Grand Court may from time to time direct. The JPLs' remuneration is also subject to the Grand Court's sanction, following the approval of the Company's creditors at a meeting convened for that purpose, or by a liquidation committee elected from the body of the creditors. The Company's first creditors' meeting was held on 12 February 2014 at Strathvale House, George Town, Grand Cayman under the chairmanship of Mr Walker. At that meeting the Company's creditors' committee was appointed.

63    Further, where the JPLs are contemplating actions which are not expressly provided for in the Order, they are required to seek the Grand Court's sanction to do so. So, for example, if the JPLs wish to prosecute, continue or defend claims anywhere in the world, other than those proceedings specifically identified in the Order, they must seek the sanction of the Grand Court.

64    In practice, this means that not only is the management of the Company being conducted from within the Cayman Islands by the JPLs (the business of the Company now being the facilitation of its restructuring pursuant to the Cayman Proceedings), but that key aspects of that management, and in particular their decisions on the prosecution of claims, is subject to the supervision of the Grand Court.

65    Accordingly, there is now therefore a substantial nexus to the Cayman Islands in respect of the operating control over the Company.

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws of the United States of America this 21st day of February, 2014.

Colin D. McKie Q.C.