O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 1625 Eye Street, NW | NEW YORK |
| BRUSSELS | Washington, D.C. 20006-4001 | SAN FRANCISCO |
| CENTURY CITY | | SEOUL |
| HONG KONG | TELEPHONE (202) 383-5300 | SHANGHAI |
| JAKARTA† | FACSIMILE (202) 383-5414 | SILICON VALLEY |
| LONDON | www.omm.com | SINGAPORE |
| LOS ANGELES | | TOKYO |
| NEWPORT BEACH | | |

May 2, 2014

WRITER'S DIRECT DIAL
(202) 383-5302

**VIA E-MAIL & ECF**

WRITER'S E-MAIL ADDRESS
pfriedman@omm.com

Honorable Stuart M. Bernstein
One Bowling Green
Courtroom 723
New York, New York 10004-1408

Re:    *In re Suntech Power Holdings Co., Ltd. (In Provisional Liquidation),*
No. 14-10383 (SMB) (Bankr. S.D.N.Y.)

Dear Judge Bernstein:

On April 1, 2014, the Court identified four discrete issues in dispute in this case: COMI,[1] venue, eligibility, and whether venue should be transferred.[2] Solyndra's overbroad and inappropriate discovery—totaling 41 document requests, 24 interrogatories, and a 30(b)(6) deposition notice with 16 separate topics—bears no relation to these four issues, seeking instead virtually unfettered discovery into Suntech Holdings' and all of its direct and indirect subsidiaries' affairs over an extended period of time.[3] Accordingly, the Court should (i) sustain the Joint Provisional Liquidators' objections to Solyndra's discovery requests to the extent they seek documents (a) predating September 1, 2013 or (b) in the possession of or related to Suntech Holdings' direct and indirect subsidiaries; and (ii) quash Solyndra's interrogatory requests as improper under Local Rule 7033-1.

---

[1] As used in this letter: (i) "COMI" refers to center-of-main-interests; (ii) "Suntech Holdings" refers to Suntech Power Holdings Co., Ltd.; (iii) "Solyndra" refers to the Solyndra Residual Trust; and (iv) the "Solyndra Transfer Venue Motion" refers to the *Memorandum of Law in Support of the Motion of the Solyndra Residual Trust to Transfer Venue* [Doc. No. 26].

[2] *See* Apr. 1, 2014 Tr. at 11-12 (attached as Exhibit A).

[3] Solyndra's document requests (and Suntech Holdings' objections and responses to the document requests), interrogatories, and deposition topics are attached to this letter as Exhibit B.

† In association with Tumbuan & Partners

O'MELVENY & MYERS LLP
May 2, 2014 - Page 2

A.    **Discovery Should Be Limited to Suntech Holdings' Activities Since September 1, 2013**

Two dates are relevant here:  November 3, 2013, the date the Cayman Islands proceeding commenced, and February 21, 2014, the date the chapter 15 case commenced.  Suntech Holdings has volunteered to search for and produce documents going back to September 1, 2013. Solyndra seeks documents going back over *three years*, to March 17, 2011.[4]  There is one entity that is relevant here:  the foreign debtor, Suntech Holdings.  Solyndra seeks documents related to and in the possession of Suntech Holdings' myriad direct and indirect subsidiaries.[5]  No issue in dispute requires such overbroad discovery.

**COMI:**  In *In re Fairfield Sentry Ltd.,*[6] the Second Circuit held that a debtor's COMI is examined at the time the chapter 15 petition is filed.  The Second Circuit also held that where an objector alleges that COMI was manipulated—as Solyndra does—the "court may consider the period between the commencement of the foreign insolvency proceeding and the filing of the chapter 15 petition to ensure that a debtor has not manipulated its COMI in bad faith."[7]  This holding ends this debate: the appropriate period of discovery is November 3, 2013 through February 21, 2014.  Suntech Holdings is nevertheless willing to go back to September 1, 2013— to ensure that relevant documents are produced.

Further, the relevant factors for determining COMI require analysis only of Suntech Holdings' affairs and activities, not its indirect subsidiaries.[8]  The only conceivable factual issue for which documents about Suntech Holdings' subsidiaries would be relevant is whether Suntech Holdings' creditors expected it to file a liquidation proceeding in the Cayman Islands.[9]  But *Suntech Holdings'* creditors are not its *subsidiaries'* creditors — and Suntech Holdings is not relying on any of its subsidiaries' activities to establish COMI.  There are no allegations that this is a substantive consolidation-type situation, nor could there be: Suntech Holdings is a non-operating, passive holding company that issued debt and securities to sophisticated financial

---

[4] Solyndra's "compromise" offer of November 5, 2012—a full year before the commencement of the Cayman proceedings—is no more justifiable.

[5] An organizational chart showing Suntech Holdings' direct and indirect subsidiaries is attached as Exhibit C.

[6] 714 F.3d 127, 134 (2d Cir. 2013).

[7] *Id.* at 137.

[8] *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 389 B.R. 325, 336 (S.D.N.Y. 2008) (citing factors relating to the *debtor's* activities, not those of non-debtor affiliates).

[9] Notably, the *only* creditor who claims to be surprised by Suntech Holdings' Cayman proceedings is Solyndra, a contingent litigation creditor that was Suntech's competitor (and not a vendor, customer or supplier) whose own antitrust complaint demonstrates its knowledge as of *October 2012* that Suntech Holdings' place of registration is the Cayman Islands. *See* Oct. 11, 2012 Complaint, ¶ 14 (attached as Exhibit D).

O'MELVENY & MYERS LLP
May 2, 2014 - Page 3

creditors via the public capital markets. Thus, to the extent any relevant information exists, it would be in Suntech Holdings' documents — not its subsidiaries' documents. [10]

**Eligibility**: Solyndra's requests also do not seek relevant information regarding eligibility under section 109(a) of the Bankruptcy Code. Section 109(a) is binary — either Suntech Holdings was eligible on its chapter 15 petition date, or it was not. When it became eligible doesn't matter for this inquiry, [11] nor does the conduct of Suntech Holdings' subsidiaries.

**Venue/Transfer Venue**: While the parties contest whether venue is appropriate here, adjudicating that dispute requires minimal discovery:

- The JPLs assert that Suntech Holdings' New York bank account satisfies § 1410(1)'s requirement that Suntech Holdings' principal asset in the United States be located here. The JPLs are providing discovery relating to the opening and maintenance of that account. There is no need for discovery into Suntech Holdings' assets before September 1, 2013, because Suntech Holdings had no other assets in the U.S. as of that time. [12] Solyndra can only justify discovery into Suntech Holdings' subsidiaries by arguing that Suntech Holdings' principal place of business and assets are located in California, not New York. [13] But this misses the mark because even if the Court credits Solyndra's argument that Suntech America—an indirect subsidiary five corporate levels removed from Suntech Holdings—is Suntech Holdings' "principal place of business" in the U.S., it is not Suntech Holdings' "principal asset[] in the United States" as a matter of law, [14]

---

[10] As a practical matter, Suntech Holdings cannot collect documents from many of its indirect subsidiaries that are currently in the control of third parties or bankruptcy administrators. Thus, even if relevant, these documents are not producible because they are not in Suntech Holdings' possession, custody or control. *See In re Vivendi Universal*, No. 02 Civ. 5571, 2009 WL 8588405, at *3-4 (S.D.N.Y. July 10, 2009) (holding that parent could not be compelled to produce documents in its wholly-owned subsidiary's control because parent did not have access to the specific documents in question).

[11] *See* 2 COLLIER ON BANKRUPTCY ¶ 109.02[3] (15th ed. 2004) (noting that "depositing money in a U.S. bank account the day before a [chapter 15] petition is filed would also render a debtor eligible").

[12] *See* Declaration of Kim Liou in Support of Suntech Power Holdings Co., Ltd.'s Motion to Dismiss the Involuntary Chapter 7 Petition ¶ 5, *In re Suntech Power Holdings Co., Ltd.*, No. 13-13350 (Bankr. S.D.N.Y.) [Doc. No. 13]. *ABC Great States, Inc. v. Globe Ticket Co.*, 304 F. Supp. 1052 (N.D. Ill. 1969), an antitrust case Solyndra has cited, supports Suntech Holdings' proposed time limitation on venue discovery. There, the court found that venue discovery should go back to "the time when the cause of action arose." *Id.* at 1054. To the extent an analogy can be drawn between venue discovery in an antitrust litigation and in a chapter 15 case, the case instructs that venue discovery should date to when Suntech Holdings' right to commence this case began: November 3, 2013.

[13] Solyndra Transfer Venue Motion ¶ 29.

[14] *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) ("A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; *and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary*.") (emphasis added); *In re Touch Am. Holdings, Inc.*, 401 B.R. 107, 126 (Bankr. D. Del. 2009) ("Touch America's status as the 'holding company,' owning all of the shares of [its subsidiaries] does not create a right to the subsidiaries' assets.").

O'MELVENY & MYERS LLP
May 2, 2014 - Page 4

and thus venue would still be met in this Court.[15]   And Suntech Holdings is providing discovery into the location of its other directly-held assets, none of which are located in the U.S. anyway.

- There is no factual dispute regarding the existence of the related chapter 7 and noteholder litigation proceedings.   Thus, no discovery is necessary to know whether Suntech Holdings would satisfy § 1410(2).

- Finally, little, if any, discovery is necessary to analyze whether Suntech Holdings satisfies § 1410(3) or whether venue should be transferred to San Francisco because of the "interest of justice and convenience of the parties" under § 1412. The JPLs will stipulate that Suntech Holdings has a single officer in the United States who is based in San Francisco.   The JPLs will also stipulate that Suntech Holdings' indirect subsidiary, Suntech America, has its business operations in San Francisco, and not New York.   The JPLs believe it is more convenient for this case to remain here because (i) of the pending, related litigation before this Court and New York Supreme Court (which independently satisfies § 1410(2)), (ii) key constituents and their professionals are here, including professionals for the Trondheim group, which has been an active participant in these matters,[16] (iii) of this Court's familiarity with the facts of this case, and (iv) of New York's proximity to the Cayman Islands and the frequent available flights.[17]   The fact that witnesses who may have information regarding Solyndra's antitrust claims are based in San Francisco is irrelevant to venue, and should not be a basis for providing Solyndra with discovery: these claims will be liquidated in the Cayman Islands, not in San Francisco.   Furthermore, all of the facts relating to Solyndra's allegations that venue in New York was manufactured occurred after the Cayman Islands proceeding was filed, thus only requiring discovery back to September 1, 2013.[18]   Finally, Solyndra cannot explain why "convenience of the parties" or the "interests of justice" require any information regarding Suntech Holdings' subsidiaries' activities.

*     *     *

---

[15] *See* 1 COLLIER ON BANKRUPTCY ¶ 4.04[2] (16th ed. 2014) ("If a debtor has its principal place of business in one district and its principal assets in another, apparently either district would be a proper venue.").

[16] The group of creditors that commenced the related involuntary proceeding are represented by counsel with no presence in California. *See* Involuntary Petition, *In re Suntech Power Holdings Co., Ltd.*, No. 13-13350 (Bankr. S.D.N.Y.) (address of Jay Teitelbaum, Esq., of Teitelbaum & Baskin, LLC) [Doc. No. 1].   In contrast, Solyndra's counsel regularly appears in these proceedings through New York counsel.

[17] While a non-stop flight from New York to Grand Cayman takes less than four hours and typically costs around $380, there are no non-stop flights between Grand Cayman and San Francisco, and flights with layovers typically take twice as long (about eight hours) and cost almost twice as much (about $675).

[18] *See* Solyndra Transfer Venue Motion ¶¶ 32-36.

O'MELVENY & MYERS LLP
May 2, 2014 - Page 5

Not only is the discovery sought by Solyndra legally irrelevant, it would be incredibly burdensome for Suntech Holdings to produce documents relating to dozens of indirect subsidiaries spanning a period of over a year. Suntech Holdings has very limited resources with which to effectuate a restructuring.[19] If Suntech Holdings must collect thousands of documents from numerous indirect subsidiaries around the globe—many of which are themselves enmeshed in restructuring proceedings overseas and have no obligation to share documents with Suntech Holdings, and which Suntech Holdings does not control— delay will result and resources that could otherwise go to creditors will be depleted. In addition, requiring Suntech Holdings to expend considerable time collecting such marginally relevant documents would be inconsistent with the Bankruptcy Code's instruction that recognition be decided "at the earliest possible time."[20]

For these reasons, the Court should sustain the JPLs' objection to Solyndra's discovery requests to the extent they seek documents predating September 1, 2013 or that relate to or are in the possession of Suntech Holdings' direct and indirect subsidiaries.[21] The Court should also limit Solyndra's deposition topics and interrogatories (to the extent the Court does not quash the interrogatories entirely) in a manner consistent with its other rulings.

### B.    Solyndra's Interrogatories Are Improper and Should Be Quashed

Solyndra's interrogatories are improper and should be quashed. Local Rule 7033-1(a) is straightforward: it limits interrogatories at the commencement of discovery to "those questions seeking names of witnesses . . ., the computation of damages alleged, and the existence, custodian, location, and general description of relevant documents." None of Solyndra's interrogatories fit into these categories. Furthermore, Local Rule 7033-1(b) provides that other interrogatories may be served only if "(i) they are a more practical method of obtaining the information sought than a request for production or a deposition or (ii) ordered by the Court." Solyndra has not claimed that it's unable to obtain this information through document discovery or deposition and it has not requested permission to serve these interrogatories. The Court should therefore reject them as improper. If the Court requires the JPLs to respond to them, the JPLs should be permitted to respond as if they were supplemental topics to Solyndra's Rule 30(b)(6) deposition, and reserve all substantive rights to object to the topics.

---

[19] Even now, Solyndra keeps adding overbroad discovery irrelevant to this proceeding. Just yesterday, Solyndra served notices seeking New York depositions on less than two weeks' notice of two Chinese directors of Suntech Holdings, Deyong He and Zhengrong Shi (who has had little involvement in Suntech Holdings' restructuring). Considering that Solyndra is getting a 30(b)(6) deposition into every conceivable factual issue relevant in this dispute, there is no justification for forcing Mr. He or Dr. Shi—neither of whom is a party here—to travel from China to New York on less than two weeks' notice for a deposition that would be entirely cumulative of the substantial discovery Solyndra is already receiving.

[20] 11 U.S.C. § 1517(c).

[21] FED. R. CIV. P. 26(b)(2)(C)(iii); *In re Residential Cap., LLC*, 480 B.R. 529 (Bankr. S.D.N.Y. 2012).

O'MELVENY & MYERS LLP
May 2, 2014 - Page 6

Respectfully submitted,

Peter Friedman
O'Melveny & Myers LLP
*Counsel to the Joint Provisional Liquidators*

cc:
William C. O'Neill
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601

John Morris
Pachulski, Stang, Ziehl & Jones
780 Third Avenue, 36th Floor
New York, NY 10017