O'MELVENY & MYERS LLP
Peter Friedman (admitted *pro hac vice*)
Daniel Shamah
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

Suzzane Uhland (admitted *pro hac vice*)
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701

*Counsel for the Joint Official Liquidators and*
*Suntech Power Holdings Co., Ltd. (in official liquidation)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 15 |
| | ) |
| **SUNTECH POWER HOLDINGS CO.,** | ) Case No. 14-10383-smb |
| **LTD. (IN OFFICIAL LIQUIDATION),** | ) |
| | ) |
| | ) |
| **Debtor in a Foreign Proceeding.** | ) |
| | ) |

**OBJECTION OF JOINT OFFICIAL LIQUIDATORS AND SUNTECH POWER**
**HOLDINGS CO., LTD. TO MOTION OF THE SOLYNDRA RESIDUAL TRUST FOR**
**RELIEF FROM THE AUTOMATIC STAY PURSUANT TO § 362**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 3

       A.    Cayman Proceeding ........................................................................... 3

       B.    SPH's Current Financial Position ............................................................ 5

       C.    United States Proceedings ..................................................................... 6

       D.    Antitrust Litigation ............................................................................... 6

ARGUMENT ..................................................................................................................... 8

    I.    THIS COURT SHOULD DENY RELIEF FROM STAY OUT OF
        DEFERENCE TO THE CAYMAN COURT AND THE CAYMAN
        PROCEEDING ......................................................................................... 8

    II.    SOLYNDRA HAS NOT SHOWN CAUSE TO LIFT THE AUTOMATIC
        STAY ...................................................................................................... 13

       A.    Lifting the Stay Would Prejudice SPH and Its Creditors ....................... 15

       B.    Maintaining the Stay Will Not Prejudice Solyndra ................................ 16

       C.    Lifting the Stay Does Not Promote Judicial Economy ........................... 19

       D.    The California Court Is Not a Specialized Tribunal and Solyndra's
          Other Arguments Fail ........................................................................... 19

CONCLUSION .................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Atlas Shipping A/S,*
    404 B.R. 726 (Bankr. S.D.N.Y. 2009) .......................................................................8

*In re Bird,*
    229 B.R. 90 (Bankr. S.D.N.Y. 1999) .................................................................. passim

*In re Chan,*
    355 B.R. 494 (Bankr. E.D. Pa. 2006) .....................................................................21

*In re Cozumel Caribe, S.A. de C.V.,*
    482 B.R. 96 (Bankr. S.D.N.Y. 2012) .......................................................................8

*In re Davis,*
    191 B.R. 577 (Bankr. S.D.N.Y. 1996) .................................................................9, 17

*In re Int'l Banking Corp. B.S.C.,*
    439 B.R. 614 (Bankr. S.D.N.Y. 2010) .....................................................................8

*Iragorri v. United Techs. Corp.,*
    274 F.3d 65 (2d Cir. 2001)......................................................................................21

*In re Joyner,*
    416 B.R. 190 (Bankr. M.D.N.C. 2009)....................................................................16

*Koreag, Controle et Revision, S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et
    Revision, S.A.),*
    961 F.2d 341 (2d Cir. 1992), *cert. denied,* 506 U.S. 865 (1992).........................9, 17

*Laker Airways Ltd v. Pan Am. World Airways,*
    568 F. Supp. 811 (D.D.C. 1983).............................................................................21

*Lifemark Hosps. of La. v. Liljeberg Enters., Inc.,*
    161 B.R. 21 (E.D. La. 1993).....................................................................................21

*In re Madoff,*
    848 F. Supp. 2d 469 (S.D.N.Y. 2012) ....................................................................14

*Mid-Atlantic Natl'l Bank v. New Jersey Dep't of Envtl. Prot.,*
    474 U.S. 494 (1986)...................................................................................................13

*In re Motors Liquidation Co.,*
    Case No. 09-50026 (REG), 2010 WL 4630327 (S.D.N.Y. Nov. 8, 2010) ............19

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*In re New York Medical Group PC*,
  265 B.R. 408 (Bankr. S.D.N.Y. 2001) ...................................................................15

*In re Penn-Dixie Industries, Inc.*,
  6 B.R. 832 (Bankr. S.D.N.Y. 1980) .....................................................................15

*In re Pioneer Commercial Funding Corp.*,
  114 B.R. 45 (Bankr. S.D.N.Y. 1990) .......................................................17, 18, 20

*Schneiderman v. Bogdanovich (In re Bogdanovich)*,
  292 F.3d 104 (2d Cir. 2002) .................................................................................14

*Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
  907 F.2d 1280 (2d Cir. 1990) .........................................................................14, 20

*In re Treco*,
  239 B.R. 36 (Bankr. S.D.N.Y. 1999) .....................................................................8

*Vesta Fire Ins. Corp. v. New Cap Reinsurance Corp. Ltd.*,
  244 B.R. 209 (S.D.N.Y. 2000) ....................................................................... passim

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
  825 F.2d 709 (2d Cir. 1987) ...................................................................................8

**STATUTES**

11 U.S.C. § 304, repealed by Bankruptcy Abuse Prevention and Consumer Protection Act
  of 2005, Pub. L. No. 109-8, § 802(d) (3), 119 Stat. 23, 146 ..................................8

11 U.S.C. § 362(d) ................................................................................................13

11 U.S.C. §§ 1501-1532 ................................................................................. passim

1.      David Walker and Yat Kit "Victor" Jong (the "**JOLs**") object to Solyndra's

motion for relief from the automatic stay to proceed with antitrust litigation in Northern

California District Court (the "**Antitrust Litigation**")[1] against Suntech Power Holdings Co., Ltd.

(in official liquidation) ("**SPH**").[2]

## PRELIMINARY STATEMENT

2.      The determination of when and where the Antitrust Litigation goes forward will

profoundly impact SPH's global liquidation efforts, which are under the primary jurisdiction of

the Cayman Court.  Putting aside potential liability (and, to be clear, SPH strongly believes none

exists) the costs of defending the Antitrust Litigation alone could force SPH into administrative

insolvency in the Cayman Court; at a minimum, defending the Antitrust Litigation will divert

resources which could otherwise be allocated by the JOLs to pursue causes of action which

would enhance creditor recoveries.  Because granting the relief requested will have such

important repercussions on the Cayman Proceeding, principles of comity and deference lying at

the heart of Chapter 15 require that the relief be denied.  Indeed, Solyndra's silence on this

issue—and the fact that the Southern District has held that the "considerations involved" in

lifting the stay in an ancillary proceeding are "markedly different" than in a typical chapter 11 or

7 case—highlights the distance by which Solyndra's motion misses the mark.  *Vesta Fire Ins.*

*Corp. v. New Cap Reinsurance Corp. Ltd.*, 244 B.R. 209, 221 (S.D.N.Y. 2000) (hereinafter

"*Vesta Fire*").  Two courts in this district have considered cases very similar to this one (both of

which Solyndra ignores), and in both the court refused to let U.S. litigation go forward out of

respect for the foreign insolvency proceeding and directed the movant to first seek relief in the

---

[1] Citations to Solyndra's memorandum of law in support of the lift stay motion are referred to herein as the
"**Motion**."  Unless otherwise indicated, citations and quotation marks are omitted and emphasis is added.

[2] For the avoidance of doubt, SPH, as used in this memorandum refers only to Suntech Power Holdings Co., Ltd. (in
official liquidation), and not to any of its subsidiaries.

foreign proceeding. *Id.*; *In re Bird*, 229 B.R. 90 (Bankr. S.D.N.Y. 1999).  The JOLs respectfully submit the same result should follow here.

3.      SPH is in a precarious position today.  Having commenced an official liquidation proceeding, the Cayman Court and the JOLs acknowledge that SPH will not be reorganized.  The only primary assets SPH has is a modest amount of cash and causes of action that may lead to further recoveries.  As a result, creditors are likely looking at very limited distributions on account of their debts if any at all.

4.      Accordingly, whether Solyndra should be permitted to continue the Antitrust Litigation—which Solyndra concedes will cost SPH hundreds of thousands of dollars in legal fees—is a momentous decision.  If the stay is lifted, Solyndra's claims may ultimately be liquidated, but SPH may spend its last dollar defending itself, leaving nothing for its creditors.  If the stay remains in place, the JOLs will have an opportunity to marshal SPH's resources, potentially paving the way for a distribution to creditors.  Such a significant decision should not rest with a court overseeing an ancillary proceeding.  Rather, consistent with chapter 15's basic principles of comity (and following the guidance of several decisions in this district), this Court should defer to the Cayman Court and give it the first opportunity to determine whether and to what extent the Antitrust Litigation should proceed.

5.      Even if this Court considers lifting the stay on its merits, the Antitrust Litigation should remain stayed.  Solyndra has failed to meet its burden of demonstrating cause for this Court to lift the automatic stay under the traditional chapter 11 or 7 factors for three reasons:

- First, the impact of lifting the stay will severely harm SPH and SPH's creditors, because it would result in SPH spending its very limited cash on its lawyers instead of distributing it to its non-bankrupt creditors.

- Second, maintaining the stay will not harm Solyndra, which (i) can continue its litigation against the other defendants and be made whole with a judgment against

them, (ii) is unable to continue the litigation against SPH's indirect subsidiary
Suntech America (which has its own chapter 11 proceeding pending) in any
event, and (iii) either already has or is able to obtain a substantial amount of the
discovery it needs to pursue its claims against others irrespective of whether the
stay remains in place.

- Third, lifting the stay will not promote judicial economy. If SPH spends its
  remaining resources defending the Antitrust Litigation, even Solyndra will not see
  a recovery on account of its claims. Lifting the stay would be a mere "empty
  gesture." Moreover, it would not prevent piecemeal litigation, as the stay remains
  in place against Suntech America.

6.      Finally, Solyndra's argument that the California Court is a "specialized tribunal"

uniquely qualified to try the Antitrust Litigation, in addition to being incorrect as a matter of law,

also fails because it relies on strawman arguments and strained legal analogies that either have

already been rejected by courts or have no bearing on a lift-stay motion. For all of these reasons,

and as explained in more detail below, this Court should deny the motion.

## BACKGROUND

7.      This Court is already familiar with the background of this case from the *Findings*

*of Fact and Conclusions of Law Granting Petition for Recognition as Foreign Main Proceeding*

*and Denying Cross-Motion to Change Venue* (the "**Recognition Opinion**"), which is

incorporated by reference herein. [Doc. No. 67.] The JOLs only reiterate those facts that are

relevant to its objection to Solyndra's motion to lift the stay.

### A.      Cayman Proceeding

8.      On November 5, 2013, a winding up petition was filed on behalf of SPH in the

Cayman Court (the "**Winding Up Petition**"). (Walker Decl., ¶ 3.)[3] David Walker and Ian

Stokoe were subsequently appointed by the Cayman Court to serve as Joint Provisional

Liquidators (the "**JPLs**") of SPH. *Id.* SPH's provisional liquidation proceeding continued for

---

[3] As used in this Opposition, (i) "**Walker Decl.**" refers to the Declaration of David Walker, and (ii) "**Lacy Decl.**"
refers to the Declaration of Richard de Lacy, both submitted in support of this Opposition.

approximately 14 months. (Walker Decl., ¶ 4.) After attempting to restructure SPH, the JPLs subsequently determined that an official liquidation and winding up of SPH's affairs would yield the highest recoveries to SPH's creditors. *Id.*

9.      Accordingly, on January 13, 2015, Michael Nacson, on behalf of SPH, filed an amended Winding Up Petition with the Cayman Court seeking to place SPH in official liquidation. (Walker Decl., ¶ 5.) The Cayman Court granted the amended Winding Up Petition on January 27, 2015, placing SPH into official liquidation and windup under the Cayman Companies Law (2013 Revision) (the "**Official Liquidation Order**"). (Walker Decl., ¶ 6.)[4] The Official Liquidation Order discharged Mr. Stokoe and Mr. Walker from their duties as JPLs and appointed Mr. Walker and Mr. Jong as JOLs. (Official Liquidation Order, ¶¶ 2-3.) The Official Liquidation Order also vested in the JOLs numerous powers and authorities, including the power to take possession of all of SPH's property and to act on SPH's behalf. (Official Liquidation Order, ¶¶ 5-9.)

10.     The Official Liquidation Order commenced a new process and granted the JOLs "the power to continue and to take such steps as the JOLs may consider appropriate . . . in the name and on behalf of the Company." (Official Liquidation Order, ¶ 5.) With this authority, the JOLs will soon call a meeting of creditors and seek establishment of a new liquidation committee. (Walker Decl., ¶ 7.) All creditors (other than those whose debts are fully secured) are eligible to vote for and be members of the new liquidation committee, so long as they have submitted a proof of debt in the official liquidation and their proof has neither been wholly disallowed by the JOLs for voting purposes nor wholly rejected for purposes of distribution or dividend. (Lacy Decl., ¶ 19.)

---

[4] A copy of the Official Liquidation Order is attached to the Walker Declaration as Exhibit C.

11.     As a matter of Cayman law, all creditors of SPH will be given the opportunity to submit or re-submit their proofs of debt, if necessary, so that the JOLs can determine each creditor's admissibility for voting at the forthcoming creditors meeting for the establishment of the new liquidation committee.  (Lacy Decl., ¶ 18.)  Under Cayman Islands law, it is also the duty of the official liquidators to adjudicate creditors' claims, for which purpose creditors' submitted proofs of debt will be evaluated.  (Lacy Decl., ¶ 22.)  Accordingly, once a liquidation committee is established, the JOLs will call for creditors to submit their proofs of debt for adjudication for distribution purposes.  *Id.*  That meeting is currently scheduled for March 16, 2015.  (Walker  Decl., ¶ 7.)  If any creditor disputes the JOLs' decision to admit or reject its proof of debt, that creditor may appeal the JOLs' decision to the Cayman Court.  (Lacy Decl., ¶ 24.)

12.     Finally, with the commencement of the Cayman Proceeding, a stay went into effect in the Cayman Islands of all actions against SPH.  (Lacy Decl., ¶ 5.)  Creditors, including Solyndra, may apply to lift the stay.  The Cayman Court has wide discretion to grant a motion to lift the stay.  (Lacy Decl., ¶ 26.)  No creditor has made such an application to the Cayman Court.

**B.     SPH's Current Financial Position**

13.     SPH's current financial position is precarious.  It has only about $1.6 million in unblocked cash on hand,[5] which is subject to unpaid professional invoices of about $970,000, and projected expenses of $2.5 to $3 million related to general liquidation expenses through the end of 2015.  (Walker Decl., ¶ 18.)  SPH expects additional revenue of approximately $1.5 million over the course of 2015.  (Walker Decl. ¶ 19.)  What SPH has are potentially very valuable litigation claims the JOLs are currently investigating and pursuing.  (Walker Decl., ¶¶

---

[5] SPH has some additional cash in other accounts that are currently subject to liens in favor of certain secured creditors.  The JOLs are in the process of negotiating resolutions with those creditors to try and obtain access to that cash.

9, 21.)  At this time, however, those claims and causes of action remain speculative; if the JOLs

have the resources and time to pursue those causes of action, they may provide a meaningful

source of recovery to SPH's creditors.  (Walker Decl., ¶ 9.)  If all of SPH's resources are drained

by defending the Antitrust Litigation, pursuing these causes of action may be impossible, thereby

eliminating any sources of recovery for Solyndra as well as all other SPH creditors.

### C.    United States Proceedings

14.    On December 4, 2014, this Court entered an order finding that SPH is eligible to

be a foreign debtor under chapter 15 of the Bankruptcy Code, finding that venue of this case is

proper in this district, and recognizing the Cayman Proceeding as a foreign main proceeding

under chapter 15 (the "**Recognition Order**").  [Doc. No. 71.]  No appeal has been taken of the

Recognition Opinion or the Recognition Order.

15.    On January 12, 2015, SPH's two indirect U.S. subsidiaries—Suntech America,

Inc. ("**Suntech America**") and Suntech Arizona, Inc.—filed chapter 11 petitions in the United

States Bankruptcy Court for the District of Delaware, those two entities' state of incorporation.

[Case No. 15-10054 (CSS).]

### D.    Antitrust Litigation

16.    On February 14, 2013, Solyndra filed an amended complaint in the Antitrust

Litigation against SPH, Suntech America, and several other defendants in the United States

District for the Northern District of California (the "**California Court**").  The Antitrust

Litigation has been stayed against SPH since SPH was involuntarily placed into chapter 7

bankruptcy in this Court on October 14, 2013.  [Case No. 13-13350.][6]  The Antitrust Litigation

continued against Suntech America until just a few weeks ago, when Suntech America filed its

---

[6] This case was dismissed with prejudice on consent on January 8, 2015.

chapter 11 petition.  Before Suntech America filed for bankruptcy, however, Solyndra took

substantial discovery from Suntech America, receiving 87,720 pages of documents.

(*Declaration of William C. O'Neil In Support of Motion of Solyndra Residual Trust for Relief*

*from the Automatic Stay Pursuant to 11 U.S.C. § 362* (the "**O'Neil Decl.**"), ¶ 12.)  [Doc. No. 80.]

17.    Solyndra acknowledges that it intends to take substantial discovery against SPH,

anticipating taking as many as 40 depositions and seeking production of hundreds of thousands

of pages of documents.  (O'Neil Decl., ¶ 12.)  Expert discovery is likely needed too.  (O'Neil

Decl., ¶ 10.)  Once this substantial discovery concludes, there is likely to be summary judgment

briefing, followed by a jury trial next year.  (O'Neil Decl., ¶ 10.)

18.    The JOLs estimate that it will likely cost $2 to $3 million to defend the Antitrust

Litigation.  (Walker Decl., ¶ 17.)  As discussed above, SPH does not currently have enough cash

to both defend the Antitrust Litigation and fund the costs of SPH's wind down, let alone make a

distribution to creditors.  (Walker Decl., ¶¶ 18-19.)  Moreover, the JOLs believe that SPH's

prospects for future recoveries are uncertain and that an adequate budget for funding litigation

against third parties is essential to realize future recoveries.  (Walker Decl., ¶ 21.)  As a result, if

Solyndra is permitted to pursue the Antitrust Litigation at this time, it would effectively render

SPH administratively insolvent.  In that circumstance, the JOLs will be obligated to dismiss the

Cayman Proceeding, dissolve SPH, and not make any distributions to SPH's creditors.  (Lacy

Decl., ¶ 40.)

## ARGUMENT

### I.    THIS COURT SHOULD DENY RELIEF FROM STAY OUT OF DEFERENCE TO THE CAYMAN COURT AND THE CAYMAN PROCEEDING

19.    This Court should deny relief from the stay because granting it would offend fundamental notions of comity.[7]

20.    Numerous courts, including the Second Circuit, have recognized comity as the "central tenet" of chapter 15.  *In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 113 (Bankr. S.D.N.Y. 2012); *see also Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) ("American courts have long recognized the particular need to extend comity to foreign bankruptcy proceedings.").  The reason for this is straightforward:  comity and deference to foreign proceedings furthers the purposes of U.S. bankruptcy laws by "promoting efficiency in international bankruptcies and encouraging other countries to defer similarly to U.S. proceedings." *In re Treco*, 239 B.R. 36, 41 (Bankr. S.D.N.Y. 1999).[8]

21.    Deference to foreign proceedings is particularly salient in the context of the automatic stay:  the "very purpose of the [ancillary] proceeding is to extend [a foreign] automatic stay to American creditors and assets and not allow creditors to do here what they would not be allowed to do in the [foreign jurisdiction]." *Bird*, 229 B.R. at 94.  Thus, a foreign court—not the U.S. court overseeing an ancillary proceeding—should be given the opportunity to "assess where and when claims should be liquidated in order to conserve estate resources and maximize the

---

[7] Solyndra asserts that this Court should lift the stay out of comity and deference to the California Court.  (Motion at ¶¶ 87-89.)  This ignores the very premise of the automatic stay, which is to freeze actions against a debtor in other courts.  To lift the stay out of "deference" to another court whenever there is prepetition litigation against the debtor would gut the Bankruptcy Code's automatic stay protections.

[8] *Victrix*, *Treco*, and several other cases cited in this memorandum were decided under chapter 15's predecessor, Bankruptcy Code section 304.  But "many of the principles underlying § 304 remain in effect under chapter 15," including "principles of comity and cooperation with foreign courts" as "evidenced by the pervasiveness with which comity appears in chapter 15's provisions." *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009); *see also In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 625 (Bankr. S.D.N.Y. 2010) ("In addition, the Court should read Chapter 15 consistently with prior law under section 304.").

assets available for distribution." *Id.* Doing so permits foreign debtors "to prevent the piecemeal distribution of assets in the United States by means of legal proceedings initiated in domestic courts by local creditors." *Id.*; *see also Vesta Fire*, 244 B.R. at 213.[9]

22.      These principles mandate maintaining the stay here. When the Cayman Proceeding commenced, a stay went into effect in the Cayman Islands of all actions or proceedings against SPH, except by leave of the Cayman Court. (Lacy Decl., ¶ 5.) Because Solyndra submitted a proof of debt in the Cayman Proceeding, it submitted itself to the jurisdiction of the Cayman Court. (Lacy Decl., ¶¶ 18-20.) Solyndra is thus subject to the automatic stay of all proceedings against SPH, including the Antitrust Litigation, unless and until the Cayman Court lifts the stay. Solyndra has not even made such an application to the Cayman Court. Therefore, as a matter of comity, Solyndra should not be "not allow[ed] . . . to do here what [it] would not be allowed to do in the [Cayman Islands]." *Bird*, 229 B.R. at 94.

23.      The parallels between this case and the well-reasoned decisions in *Vesta Fire* and *Bird* are striking. Judge Sweet in *Vesta Fire* observed that whether to permit a creditor to continue pursuing a U.S. arbitration after the commencement of an ancillary proceeding is a question "more appropriately put to the Administrator or an Australian court entrusted with the task of supervising [the foreign debtor's] insolvency." *Vesta Fire*, 244 B.R. at 220. Notwithstanding the very strong public policy in favor of permitting arbitrations to go forward under the Federal Arbitration Act, the District Court held, in terms applicable here, that lifting the stay in an ancillary proceeding requires a different weighing of interests than lifting the stay in a domestic proceeding:

---

[9] *See also In re Davis*, 191 B.R. 577, 582 (Bankr. S.D.N.Y. 1996) (quoting *Koreag, Controle et Revision, S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et Revision, S.A.)*, 961 F.2d 341, 348 (2d Cir. 1992), *cert. denied*, 506 U.S. 865 (1992)).

> A proceeding pursuant to Section 304 does not call for a bankruptcy court to make any determination of the debtor's property interests. Neither does it call for the domestic bankruptcy court to make any determination concerning the timing of liquidation, or the manner in which the validity of creditors' claims are to be assessed. *As a result, while a bankruptcy court supervising a domestic insolvency may well be expected, in the exercise of discretion, to allow a creditor seeking to commence or continue an arbitration relief from an automatic stay, the considerations involved in granting an exception from a Section 304(b) injunction are markedly different.*

*Id.* at 221.

24.     Similarly, in *Bird*, Judge Brozman refused to permit creditors to proceed with RICO claims (which, like the claims at issue here, are (i) statutory claims (i.e., not common law claims rooted in English jurisprudence) with a highly complex body of unique U.S. law, (ii) that may be heavily factually-intensive and subject to a jury trial and for which (iii) treble damages are allowed) against the foreign debtor in the U.S. without first seeking leave of the foreign court overseeing the debtor's insolvency proceeding. *Bird*, 229 B.R. at 95. In denying creditors permission to go forward, Judge Brozman observed that, unlike in a domestic bankruptcy case, U.S. courts in ancillary proceedings should defer to foreign courts when it comes to deciding the validity and extent of claims, particularly where the claim threatens to interfere with the foreign proceeding:

> [M]y function in a domestic bankruptcy case is quite different from my function in an ancillary one. Were this a traditional chapter 7 or 11 proceeding, I would be empowered to administer [the] estate. . . . However, in the context of an ancillary proceeding, I do not determine the extent or validity of claims against the estate; proofs of claim are not even filed in this court. The administration of the debtor's estate, as a whole, is not within my province, for I am not the home court; the main proceeding is in the [foreign court]. *It would offend principles of comity for me to decide, in lieu of the [foreign court], whether the claims which [the litigation parties] seek to assert would unduly interfere with the provisional liquidation and the court proceeding which likely would follow it.*

-10-

*Id.* at 95-96.

25.     Moreover, the District Court in *Vesta Fire* found that even permitting the plaintiff

to liquidate its claim and not collect on its judgment would offend principles of comity, because

the foreign court should decide whether (i) to permit the foreign debtor to expend funds

defending the arbitration, and (ii) the plaintiff's position with respect to other creditors should

improve by permitting the plaintiff to obtain a judgment. *Vesta Fire*, 244 B.R. at 219.  Judge

Brozman similarly observed in *Bird* that it is not the U.S. court's "mandate to determine which

collection efforts should go forward and under what conditions"; rather, she held, it would be

"entirely appropriate" for the creditors to first seek leave from the foreign court to bring suit in

the U.S.  *Bird*, 229 B.R. at 96.

26.     These rulings apply with great force here, where lifting the stay risks depriving

SPH creditors of any recovery.  For this Court to give Solyndra—alone among SPH's

creditors—the green light to litigate its claims in the U.S. without the sanction of the Cayman

Court would similarly "offend principles of comity" that underlie chapter 15.  Solyndra

acknowledges that it will take mountains of written discovery and up to 40 depositions.  (O'Neil

Decl., ¶ 12.)  That will costs hundreds of thousands if not millions of dollars SPH cannot afford.

As Mr. Walker testified, litigating the Antitrust Litigation claims now in the U.S. courts would

potentially drown SPH in legal fees, depriving SPH's creditors, including Solyndra, of any

recoveries at all.  (Walker Decl., ¶ 23.)  Moreover, as Richard de Lacy testified, if the costs of

defending the Antitrust Litigation exceed SPH's available assets, the JOLs will be obligated to

shut down the liquidation and dissolve SPH without making any distributions to creditors.  (Lacy

Decl., ¶ 40.)  Given the potentially grave consequences of letting the Antitrust Litigation go

forward, the Cayman Court should be entitled to decide whether and under what conditions Solyndra's litigation ought to move forward.

27.     Finally, *Bird* demonstrates that the stay should remain in place when a claims adjudication process needs to play out in the foreign court.  The plaintiff there, like Solyndra here, complained that "British law does not have a RICO cousin and [the plaintiff] will be deprived of its rights if not allowed to bring its RICO Action against the debtor in an American court."  *Bird*, 229 B.R. at 94.  Judge Brozman nevertheless refused to permit the plaintiff to go forward because the foreign proceeding was "clearly geared up for processing claims inasmuch as the Provisional Liquidation Order . . . empowers the provisional liquidators to settle claims."  *Id.* at 96.  Moreover, she concluded the plaintiff's "lamentation about not being able to have their claims administered in the foreign proceeding is not only premature, but ill-founded.  It is fundamental that the [foreign] court decide when, where and how those claims should be processed."  *Id.*

28.     Again, *Bird* should govern here.  Even though the Cayman Islands may not have an "antitrust cousin," that does not justify upsetting the balance of authority between the court supervising a recognized foreign main proceeding and the court supervising an ancillary proceeding.  The Cayman Court can authorize Solyndra to pursue the claim in the U.S. if it determines that doing so is necessary to liquidate Solyndra's claim.  Moreover, just like the provisional liquidators in *Bird,* the Official Liquidation Order "empowers" the JOLs to "settle claims" under the supervision of the Cayman Court.  That process has not begun yet, and, as Mr. Lacy's declaration makes clear, has substantial room to play out.  Thus, Solyndra's

"lamentation" that it cannot get a fair shake in the Cayman Islands "is not only premature, but ill-founded."[10] *Id.*

\*       \*       \*

29.    Lifting the stay is about far more than liquidating Solyndra's disputed claim—it's potentially about the entire course SPH's liquidation takes and whether SPH's creditors see any recovery *at all*. Given the stakes, it should be the Cayman Court that decides "when, where and how [Solyndra's] claims should be processed." *Bird*, 229 B.R. at 97. For that reason alone and out of deference to the Cayman Court, this Court should deny the motion.

## II.    SOLYNDRA HAS NOT SHOWN CAUSE TO LIFT THE AUTOMATIC STAY

30.    As the District Court in *Vesta Fire* noted, "the considerations involved" in lifting the stay in an ancillary proceeding "are markedly different" from the traditional lift-stay factors courts consider in domestic bankruptcy cases. *Vesta Fire*, 244 B.R. at 221. Solyndra completely ignores *Vesta Fire* because it dooms the motion. But even if this Court were to find *Vesta Fire* inapplicable, Solyndra has not established "cause" to lift the automatic stay. 11 U.S.C. § 362(d). The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy

---

[10] Solyndra's repeated insistence that the JPLs' valuation of their claim at $0 for voting purposes before the last creditor meeting is evidence that their claim cannot be fairly addressed by the Cayman Court (Motion, ¶¶ 26, 81) is moot and disingenuous:

- It's moot because an entirely new creditors' committee vote will take place shortly. Solyndra will have an opportunity to re-apply for the liquidation committee at that time (Lacy Decl., ¶ 19), and, while the JOLs have not made a decision yet, it is possible that, given the passage of time and intervening circumstances, they will value Solyndra's claim for voting purposes at an amount greater than $0.

- The argument is disingenuous because, (i) the JPLs only valued the claim at $0 for voting purposes, not for distribution and did so on the advice of counsel based on SPH's motion to dismiss Solyndra's claim, which was still pending at the time, and (ii) at no point did the Cayman Court weigh in on that decision. In contrast, once the JOLs determine Solyndra's claim for *distribution* purposes, Solyndra will have recourse to the Cayman Court to appeal that decision if Solyndra disagrees with it. (Lacy Decl., ¶ 20.)

Moreover, Solyndra , after initially pressing this argument in objecting to recognition (*see Objection of Solyndra Residual Trust to Chapter 15 Petition of Suntech Power Co. Ltd. (In Provisional Liquidation) for Recognition of Foreign Main Proceeding Pursuant to Section 1517 of the Bankruptcy Code*, at ¶¶ 64-65) [Doc. No. 22], ultimately abandoned it altogether. Solyndra offers no reason why this Court should consider it anew.

laws." *Mid-Atlantic Natl'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986).

"A major objective of the automatic stay is to prevent dissipation of the debtor's assets before

orderly distribution to creditors can be effected." *In re Madoff*, 848 F. Supp. 2d 469, 478

(S.D.N.Y. 2012).

31.     While the Second Circuit has identified a host of factors for courts to consider in

deciding whether to lift the automatic stay, *Sonnax Indus., Inc. v. Tri-Component Prods. Corp.

(In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990),[11] the Second Circuit has

repeatedly held that not every one of these factors will be relevant in every case. *See, e.g.*,

*Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002).

Moreover, Solyndra, as the party seeking to lift the stay, bears the burden to show cause why the

stay should be lifted. *Sonnax*, 907 F.2d at 1285. "If [Solyndra] fails to make an initial showing

of cause . . . the court should deny relief without requiring any showing from the debtor that it is

entitled to continued protection." *Id*.

32.     In this case Solyndra fails to meet this burden for at least three reasons.  First,

lifting the stay will materially harm SPH and its other creditors and would significantly disrupt

the JOLs' efforts to efficiently conduct an orderly liquidation.  Second, Solyndra is not

prejudiced by maintaining the stay.  Third, lifting the stay does not promote judicial economy,

because draining SPH of all its cash will deprive everyone, including Solyndra, of any

recoveries, rendering the relief sought an "empty gesture."  Moreover, lifting the stay would be

uneconomical, because Solyndra will still have to wait to pursue its claim against SPH's indirect

subsidiary and co-defendant Suntech America.

---

[11] These factors are correctly identified in the Motion (Motion ¶ 45 n.16), although they are serially misapplied.

### A.    Lifting the Stay Would Prejudice SPH and Its Creditors

33.    The Court should not lift the stay, because proceeding with the Antitrust

Litigation will injure SPH and SPH's other creditors.  It would injure SPH in at least two ways.

First, as explained above, lifting the stay will interfere with the JOLs' nascent efforts to run an

orderly liquidation.  And, the distraction and cost of litigating the Antitrust Litigation now will

impair the JOLs' ability to convene the liquidation committee, oversee the claims adjudication

process, and efficiently run SPH's wind-down, which are described in the Lacy Declaration.

34.    Second, if the stay is lifted the JOLs may have to spend SPH's last dollar

defending the Antitrust Litigation.  (Walker Decl., ¶ 23.)  Solyndra's willingness to forgo

collecting a judgment is no cure when the legal fees that are the poison:  in an ancillary

proceeding such as this one, this hardship is reason enough to deny the motion.  *See Vesta Fire*,

244 B.R. at 219 (holding that foreign debtor having to expend funds in defense of arbitration,

even where plaintiff was willing to forgo collection, was a factor in denying motion to lift

stay).[12]  Indeed, in one case cited by Solyndra, *In re Penn-Dixie Industries, Inc.*, 6 B.R. 832

(Bankr. S.D.N.Y. 1980) (Motion, ¶ 63), Judge Lifland denied a motion to lift the stay to permit

plaintiffs merely *to obtain discovery* against the debtor in an antitrust suit, because lifting the

stay "would result in a not insubstantial expenditure from the Debtor's estate of energy and

money away from the Chapter 11 reorganization effort."   *Id.* at 836.  *A fortiori*, the stay should

---

[12] *In re New York Medical Group PC*, 265 B.R. 408 (Bankr. S.D.N.Y. 2001) (Motion ¶ 58) does not alter this result.
There, the court lifted the stay because it found that the debtor would not be immediately harmed because an insurer
was covering the costs of defense. *Id.* at 413.  While it also rejected the argument that creditor dilution alone
justifies maintaining the stay, the opposite is true here:  there is no insurance picking up the tab and lifting the stay
risks rendering SPH for all intents and purposes administratively insolvent, eliminating any recoveries for creditors.

remain in place when an antitrust plaintiff like Solyndra seeks to effectively bleed the debtor completely dry.[13]

35.    But SPH would not be the only victim of the stay being lifted.  Lifting the stay will also prejudice SPH's other creditors.  The Antitrust Litigation will be very expensive, threatening to subsume SPH in legal costs, depriving its creditors of any recoveries.  Solyndra concedes this, noting that it intends to immediately take substantial discovery of SPH and ultimately aim to try the case before a jury.  (O'Neil Decl., ¶ 12.)  SPH does not have the resources to withstand this litigation barrage.  Moreover, giving Solyndra the go-ahead to obtain a judgment against SPH would improve Solyndra's position at the expense of SPH's other creditors, yet another reason to deny the motion.  *See Vesta Fire*, 244 B.R. at 219 (denying motion to lift the stay, because "allowing Vesta to proceed to judgment would be to allow it to improve its position with respect to other creditors").[14]  SPH and its creditors should not be forced to bear the hardship that permitting Solyndra to proceed with the Antitrust Litigation would entail.

### B.    Maintaining the Stay Will Not Prejudice Solyndra

36.    In addition, maintaining the stay will not meaningfully prejudice Solyndra.  Just because the Antitrust Litigation "was well under way when this Court" entered the Recognition Order (Motion, ¶ 2) does not mean that Solyndra has shown cause to lift the stay.  *See In re*

---

[13] Solyndra's argument that the Antitrust Litigation is independent from this case (Motion, ¶¶ 63-66) misses the forest for the trees.  The JOLs concede that the Antitrust Litigation will not interfere with this chapter 15 case.  But Solyndra does not even address the risk that the Antitrust Litigation will dramatically impact the Cayman Proceeding.

[14] *In re Joyner*, 416 B.R. 190 (Bankr. M.D.N.C. 2009) (Motion, ¶¶ 50, 58, 62, 78) is distinguishable for the same reason.  There, the court specifically found that lifting the stay would not "change the status or the priority of the claims."  *Id.* at 193.  Here, in contrast, given the precarious nature of SPH's finances, lifting the stay may very well give Solyndra a leg up on SPH's other creditors.  Moreover, even lifting the stay only to allow Solyndra to obtain a judgment would likely leave SPH unable to pay the costs of running its liquidation.  There was no evidence that the debtor in *Joyner* faced administrative insolvency if forced to litigate a state court action.  And, of course, *Joyner* was not a chapter 15 case.

*Pioneer Commercial Funding Corp.*, 114 B.R. 45, 47 (Bankr. S.D.N.Y. 1990) ("As an

unliquidated, unsecured creditor, FHLMC must establish extraordinary circumstances before the

stay would be lifted in order to compel the debtor to continue to participate as a defendant in

FHLMC's multi-defendant action in California.").  For several reasons, Solyndra cannot show

that there are "extraordinary circumstances" here that would justify the relief it seeks.

37.    First, Solyndra will not be prejudiced because it can be made whole even without

SPH's involvement in the Antitrust Litigation.  SPH is only one of several defendants—and

undoubtedly the poorest—named in the Antitrust Litigation.  All of those defendants are jointly

and severally liable.  Thus, Solyndra can obtain judgments against SPH's co-defendants in the

full amount of its claims and be made whole even while the stay remains in place against SPH.

Solyndra has litigated the Antitrust Litigation for two years without SPH's involvement and is

still more than a year away from trial.  Solyndra does not explain why SPH's involvement *now* is

so critical to bringing the Antitrust Litigation to resolution that lifting the stay is necessary in the

face of the hardship it would impose on SPH and SPH's other creditors.

38.    Second, Solyndra's stated desire to proceed full speed ahead to trial and complete

resolution of the Antitrust Litigation (Motion, ¶¶ 67-75) is belied by its failure to seek relief from

stay with respect to SPH's U.S. affiliate and co-defendant Suntech America.[15]  Courts routinely

observe that a principal purpose of the automatic stay is to avoid piecemeal litigation.  *See, e.g.,*

*Davis*, 191 B.R. at 582 ("The principal purpose of a § 304 petition is to permit foreign debtors to

prevent the piecemeal distribution of assets in the United States by means of legal proceedings

initiated in domestic courts by local creditors."); *Koreag, Controle et Revision, S.A.*, 961 F.2d at

---

[15] This Court should be skeptical of Solyndra's assertion that the Antitrust Litigation will be ready for trial within a
year (Motion, ¶¶ 4, 22, 34, 49, 64, 76), mostly because the Antitrust Litigation remains stayed against Suntech
America.  Given Solyndra's desire to try the case against all defendants at once (as evidenced by this very Motion),
the continuation of the stay against Suntech America calls into question whether the current trial schedule will
actually hold.

348 (same).  But that's exactly what would happen if the stay is lifted against SPH but remains in

place against Suntech America.  Whatever the reason for Solyndra's tactical decision not to seek

to lift the stay against Suntech America, Solyndra cannot contend that it needs to proceed against

SPH to reach a full resolution of the Antitrust Litigation, since it is currently unable (and

apparently unwilling) to proceed against Suntech America.[16]

39.    Nor does the fact that Solyndra asserted a federal antitrust claim justify lifting the

stay.  (*See* Motion, ¶¶ 47-49.)  In *Pioneer*, the bankruptcy court did not find that the plaintiff's

federal statutory claim against the debtor (in that case, a RICO claim) altered the lift-stay

analysis or otherwise required that the bankruptcy court accord extra deference to the plaintiff's

claims.  *Pioneer Commercial Funding*, 114 B.R. at 48.  To the contrary, the court in that case

found that an unsecured, unliquidated creditor had no right to continue its prepetition litigation

against the debtor absent a showing of "extraordinary circumstances" justifying the relief.  *Id.* at

47.  Solyndra fails to make a showing that it should fare any better.

40.    Finally, maintaining the stay will not deprive Solyndra of any meaningful

discovery in the Antitrust Litigation.  (Motion, ¶¶ 49, 79-80.)  The stay against SPH has not

impacted Solyndra's ability to take any depositions, because SPH does not have any current

employees with relevant knowledge of the Antitrust Litigation who would otherwise be protected

by the automatic stay.  (Walker Decl., ¶ 16.)  Solyndra is free to subpoena and seek to depose

former SPH employees.  Moreover, Solyndra already has the benefit of substantial discovery

produced by Suntech America and the other defendants in the Antitrust Litigation.  Thus, other

than SPH's documents, Solyndra appears to have the discovery it needs to proceed with the

Antitrust Litigation.

---

[16] If Solyndra intends to seek relief from stay in the future to continue the Antitrust Litigation against Suntech
America, this Court should at a minimum defer on the Motion so that all of the Suntech-related lift-stay motions
could be heard at once.

### C.     Lifting the Stay Does Not Promote Judicial Economy

41.     Finally, lifting the stay would a waste of judicial resources, because if Solyndra is

permitted to proceed, it is unlikely that it would see a recovery on account of its claims even if it

ultimately prevails.  Judge Brozman's decision in *Bird* is once again instructive.  There, Judge

Brozman confirmed that the automatic stay should not be lifted if the debtor does not have

adequate resources "to compensate the claims" of the plaintiff asserting the claim, because, in

such circumstances, lifting the stay would "be an empty gesture."  *Bird*, 229 B.R. at 95.  This

case is no different.  Lifting the stay to permit that lawsuit to go forward would just be an "empty

gesture" that would benefit no one other than SPH's lawyers.  Indeed, if lifting the stay renders

SPH administratively insolvent, the JOLs will be obligated to dismiss the Cayman Proceeding

altogether, dissolve SPH, and not make any distributions to creditors.

42.     Moreover, Solyndra's decision not to seek to lift the stay as to Suntech America

defeats any argument that lifting the stay would promote judicial economy.  Solyndra cannot

explain why the stay should remain in place as to Suntech America but not SPH.  Thus, lifting

the stay would not provide relief, further militating against lifting it at all.

### D.     The California Court Is Not a Specialized Tribunal and Solyndra's Other
    Arguments Fail

43.     Finally, Solyndra's argument that the California Court is "a specialized tribunal"

uniquely suited to adjudicate (Motion, ¶¶ 46-56) and completely resolve the Antitrust Litigation

fails.  (Motion, ¶¶ 67-75.)  As an initial matter, this factor does not weigh in favor of lifting the

stay.  Federal district courts like the California Court are not considered specialized tribunals for

the purpose of interpreting federal statutes.  *See In re Motors Liquidation Co.*, Case No. 09-

50026 (REG), 2010 WL 4630327, at *5 (S.D.N.Y. Nov. 8, 2010) (affirming bankruptcy court

ruling denying motion to lift the stay because district court was not a specialized tribunal with

any unique expertise in adjudicating ERISA actions).

44.     Moreover, Solyndra's arguments that this Court and the Cayman Court cannot try

the Antitrust Litigation do not justify the relief it seeks:

- Solyndra's argument that this Court is not suited—either because it lacks the
  expertise or the constitutional authority—to try the Antitrust Litigation is a straw
  man.  (Motion, ¶¶ 50, 70-75.)  At no point has SPH or the JOLs suggested that the
  Antitrust Litigation ought to proceed in this Court.

- The JOLs and SPH have not suggested that Solyndra file a proof of claim in this
  case.  Rather, Solyndra, just like every other creditor of SPH, should first submit
  its claim for determination by the JOLs, and, if Solyndra disagrees with the JOLs'
  determination, appeal the matter to the Cayman Court.

- Solyndra's argument—asserted without citation to any authority discussing
  Cayman law or Cayman courts—that the Cayman Court is incapable of trying the
  Antitrust Litigation misses the point.  (Motion, ¶¶ 54-55.)  The JOLs are not
  seeking permission today to have the Cayman Court try the Antitrust Litigation.
  Solyndra's claim has not been adjudicated by the JOLs, Solyndra has not
  appealed an adverse ruling to the Cayman Court, and Solyndra has not sought
  leave of the Cayman Court to continue the Antitrust Litigation in the U.S.[17]  In
  the absence of Solyndra taking any of these steps, the Cayman Court has not had
  an opportunity to weigh in on where, when, and whether Solyndra should be
  permitted to pursue the Antitrust Litigation in the U.S.  Therefore, if nothing else,
  the Court should deny the motion as premature.

45.     Finally, after ignoring *Vesta Fire* and improperly seeking to apply *Sonnax* to this

case, Solyndra tries to duck *Sonnax* altogether by drawing analogies to legal doctrines that have

no bearing on a lift-stay motion:

- Solyndra's analogy to withdrawal of the reference cases (Motion, ¶¶ 51-52; 69) is
  flawed and does not justify lifting the stay.  The District Court in *Pioneer
  Commercial Funding* already considered and rejected the identical analogy,
  finding it faulty because of the unique statutory provisions governing withdrawal
  of the reference.  114 B.R. at 48.  Thus, the withdrawal of the reference cases

---

[17] In fact, if Solyndra proceeds against SPH's co-defendants, it is very likely that no court will ever have to try the
Antitrust Litigation, either because (i) SPH's co-defendants, who are jointly and severally liable, will have satisfied
any judgments Solyndra obtains, (ii) the JOLs will have settled Solyndra's claim, or (iii) Solyndra and/or SPH will
be bound by principles of collateral estoppel that would obviate the need for a trial on the vast majority of factual
and legal issues in dispute.

Solyndra cites are inapposite.  (*See* cases cited in Motion, ¶¶ 51-52; 69.)[18]
Similarly, the mere fact that Solyndra has demanded a jury trial (Motion, ¶¶ 84-86), while relevant to a motion to withdraw the reference, is not a sufficient basis
to justify lifting the stay.  *See In re Chan*, 355 B.R. 494, 501 (Bankr. E.D. Pa. 2006).

- The analogy to the *forum non conveniens* doctrine is even more strained.
  (Motion, ¶¶ 53-54.)  *Forum non conveniens* is a common law doctrine designed to
  prevent forum shopping.  *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-72
  (2d Cir. 2001).  Solyndra cannot explain how that doctrine can apply to a Cayman
  company undergoing a Cayman liquidation filing a chapter 15 petition and
  obtaining the benefit of the automatic stay, just like every other foreign debtor
  who obtains recognition of a foreign main proceeding.  Indeed, Solyndra does not
  cite one case that justifies lifting the stay on the basis of this doctrine.[19]

## CONCLUSION

46.     This Court should not accept Solyndra's invitation to substitute this Court's

judgment for the Cayman Court's judgment as to the direction SPH's liquidation takes.  Doing so

would undermine the very premise of chapter 15—deference and comity to foreign courts and

recognized foreign main proceedings.  Moreover, lifting the stay would have devastating

consequences to SPH with minimal benefit to Solyndra.  It would disrupt an orderly liquidation

of SPH, distract the JOLs at the outset of the official liquidation, undermine the Cayman Court's

ultimate authority over SPH's wind down, and deprive SPH's creditors from realizing any

recoveries.  And it would not materially advance the Antitrust Litigation, which would remain

stayed as to Suntech America.  For these reasons, and for the reasons explained in greater detail

---

[18] Indeed, *Lifemark Hospitals* (Motion, ¶ 52) undermines Solyndra's withdrawal of the reference analogy.  There, the court found that "not every validly stated antitrust claim in a bankruptcy proceeding automatically triggers mandatory withdrawal" and that "wasting nature of the debtor's property [is] an additional factor militating against withdrawal."  *Lifemark Hosps. of La. v. Liljeberg Enters., Inc.*, 161 B.R. 21, 25 (E.D. La. 1993).

[19] The one case Solyndra cites in support of this novel theory, *Laker Airways Ltd v. Pan Am. World Airways*, 568 F. Supp. 811 (D.D.C. 1983), is totally inapposite.  There, the defendant affirmatively invoked the *forum non conveniens* doctrine to dismiss an antitrust suit.  The automatic stay was not even an issue in that case.  Moreover, the JOLs are not invoking any doctrine to seek dismissal of the Antitrust Litigation.  Rather, the JOLs are seeking to treat Solyndra in the same manner as the rest of SPH's creditors.

above, the Court should deny the motion in its entirety, and grant SPH such other relief as the

Court deems just and appropriate.

[*Remainder of page left intentionally blank*]

Dated: February 19, 2015
New York, New York

O'MELVENY & MYERS LLP


/s/ Peter Friedman
Peter Friedman (admitted *pro hac vice*)
Daniel Shamah
Times Square Tower
7 Times Square
New York, New York
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

Suzzanne Uhland (admitted *pro hac vice*)
Two Embarcadero Center
28th Floor
San Francisco, CA 94116
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701

*Counsel for the Joint Official Liquidators
and Suntech Power Holdings Co., Ltd. (in
official liquidation)*